CANDLEWOOD TIMBER GROUP, LLC and Forestal Santa Barbara SRL, Plaintiffs Below, Appellants,

v.

PAN AMERICAN ENERGY, LLC, Defendant Below, Appellee.

No. 543,2003.

Supreme Court of Delaware.

Submitted: April 27, 2004.
Decided: Oct. 4, 2004.

Joel Friedlander, and John M. Seaman, of Bouchard Margules & Friedlander, Wilmington; Jeffrey Marshal Kossak, (argued) of New York City, of counsel, for Appellants.

Thomas R. Hunt, Jr., (argued), David J. Teklits, and Thomas W. Briggs, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, for Appellee.

Before HOLLAND, BERGER and JACOBS, Justices.

JACOBS, Justice:

The plaintiffs below, Candlewood Timber Group LLC ("Candlewood") and Forestal Santa Barbara SRL ("FSB"),[1] appeal from an order of the Court of Chancery dismissing their complaint against the defendant below, Pan American Energy, LLC ("Pan American"), for lack of subject matter jurisdiction and on the ground of *forum non conveniens.*[2] We affirm the dismissal insofar as it is predicated on lack of subject matter jurisdiction, but reverse the dismissal insofar as it is based on *forum non conveniens.* We also remand

the case with directions that it be transferred from the Court of Chancery to the Superior Court.

## FACTS

### Procedural History

Candlewood is a Delaware limited liability company that is engaged in a venture with its wholly-owned and controlled Argentine subsidiary, FSB, to sell wood products derived from South American forests that are managed consistently with international standards of sustainable forestry.[3] FSB is the vehicle through which Candlewood purchased approximately 250,000 acres of forest land, including 70,000 acres that are located in the Province of Salta, Republic of Argentina.

Pan American, a Delaware limited liability company that engages in oil and gas extraction, is the second largest hydrocarbon producer in Argentina. Pan American is the majority owner and the operator of a consortium of companies that were granted concessionary rights by the Argentine Republic (which owns all of the oil and gas rights in Argentina) to extract oil and gas in the Province of Salta. That concession covers the land owned by FSB in the Salta Province. The majority owner of Pan American is a subsidiary of BP p.l.c., and the minority owner is Bridas Corporation, an oil company controlled by one of Argentina's wealthiest families.

1. Except where the context requires a more specific reference, Candlewood and FSB are referred to collectively in this Opinion as "Candlewood."

2. *Candlewood Timber Group, LLC v. Pan Am. Energy LLC,* C.A. No. 20135, 2003 WL 22417235 (Del.Ch. Oct. 22, 2003).

3. According to Candlewood's complaint, sustainable forestry is designed to foster the renewal of prime forest resources and employment opportunities for local residents. It operates to preserve the long term environmental benefits of forest lands while realizing the economic and social values of marketable timber. Sustainable forestry involves the extraction of such timber from prime forest lands, while preserving intact the forest and its valuable environmental habitats and biodiversity.

Pan American sought permission from FSB to extract the oil and gas from underneath FSB's land. At Candlewood's direction, FSB gave Pan American permission to enter FSB's forest land, conditioned on Pan American's written agreement that it would (among other things) purchase comprehensive liability insurance and indemnify FSB against any damage Pan American caused to the property. Thereafter, according to Candlewood's complaint, Pan American violated those obligations by undertaking a drilling program that inflicted massive unremediated property damage to FSB's land, thereby making it impossible for Candlewood to obtain the environmental certifications required for their sustainable forestry business.

On January 28, 2003, Candlewood filed an action against Pan American in the Court of Chancery for monetary and injunctive relief. On March 4, 2003, Candlewood filed an amended complaint. The following day, Pan American filed an original action in the Supreme Court of Argentina against Candlewood and FSB. In its Argentine action, Pan American sought a declaration that the parties' dispute was subject to the original jurisdiction of the Argentine Supreme Court, the Argentine federal courts, or the Argentine provincial courts. In support of its application, Pan American alleged that the "mere existence of the Delaware action," and the threat of restraining orders had caused Pan American to suspend its drilling operations, and that orders of a Delaware court might interrupt its operations and force Pan American to breach its supply contracts. Pan American also sought to join the Nation of Argentina and the Province of Salta as third parties, so as to create original jurisdiction in the Argentine Supreme Court.

Pan American responded to Candlewood's Delaware Chancery complaint by filing a motion to dismiss or, alternatively, to stay the Delaware action in favor of its Argentine action. Thereafter, Candlewood filed a second amended complaint that dropped all its requests for injunctive relief, including relief that would require supervision of Pan American's conduct on FSB's land in Argentina. Candlewood and FSB did, however, continue to assert claim for specific performance of Pan American's contractual obligation to purchase liability insurance.

In their second amended complaint, which is the operative complaint for purposes of this appeal, Candlewood included claims for breach of contract, negligence, fraud, tortious infringement of property rights, and tortious interference with business relations. Candlewood's contract claim alleges that Pan American breached its obligation under the extraction permits and accompanying correspondence, and that "Candlewood and FSB are entitled to indemnification for their losses, and [to] specific performance to compel Pan American to purchase comprehensive liability insurance. . . ." Candlewood's request for specific performance is the only reference in its complaint to an equitable remedy.

On May 30, 2003, Candlewood filed a motion in the Court of Chancery to restrain Pan American from prosecuting its Argentine action. Candlewood also moved for a declaration that the Court of Chancery is the appropriate forum to adjudicate their claims. On June 26, 2003, after a hearing, the Court of Chancery entered an order restraining Pan American from interfering with the prosecution of Candlewood's motion for a declaration that the Court of Chancery was the proper forum to adjudicate their claims.

Meanwhile, on June 23, 2003, Pan American filed a second action in an Ar-

gentine provincial court, seeking partial expropriation of FSB's land. On September 12, 2003, after admitted discussions and a meeting among representatives of Pan American and the Argentine Government, the Nation of Argentina filed a pleading in Pan American's Argentine Supreme Court action, attacking the jurisdiction of the Delaware courts. In that pleading, the Nation of Argentina, referencing the "permanent injunctions" being sought in Candlewood's original complaint, claimed that the "basic institutions of the Nation [were] at risk" because of "the possibility that gas production in the Acambuco area could be ... affected" by "one or more rulings by a foreign court." [4] That pleading did not disclose to the Argentine Court that Candlewood was seeking only damages based on common law claims arising out of private contracts with Pan American. Nor did that pleading disclose that Candlewood had previously informed the Court of Chancery (and Pan American) that they were "not seeking any injunctive relief requiring supervision of Pan American's conduct on the land in Argentina." [5]

### Facts Relating To Forum Non Conveniens Motion

The facts relating to Pan American's motion to dismiss Candlewood's Court of Chancery action are uncontroverted.

Pan American has tremendous resources at its disposal. Describing itself as a "leading regional player" in oil and gas production with operations throughout the Southern Cone of South America, Pan American is the principal vehicle for BP's oil and gas activity in Argentina, Bolivia, Brazil, Chile and Uruguay. Pan American's certified reserves approach 2 billion barrels of oil equivalent, and its exploration block portfolio approximates 5 million net acres.

Pan American conducts significant business in the United States. When asked in an interrogatory to identify which of its employees traveled to the United States on business, Pan American replied that many of its employees "travel abroad on a regular basis, including to the United States." Pan American also stated that it "does not contend that it would be an undue hardship for some of its employees to travel to the United States, but it would be unduly burdensome to seek to identify each person who has traveled to the United States and the dates of such travel."

To conduct its international business, Pan American regularly agrees to litigate in the United States. Its gas export contracts and crude oil sales contracts provide exclusively for dispute resolution in the United States, and its financial agreements specify either English or United States fora. On three occasions in recent years

---

4. Pan American appears to have used its access to the highest levels of the Argentine government to influence both this litigation and Pan American's second-filed action in Argentina. In connection with the preliminary injunction hearing in the Court of Chancery, Pan American wrote a letter to Argentina's Secretary of Foreign Relations, met with the legal advisor to the Ministry of Foreign Affairs, wrote a letter to the Secretary of Energy, and spoke with the Secretary of Energy's legal advisors. Officials from both ministries wrote letters in support of Pan American's position, which Pan American

submitted to the Court of Chancery. Pan American also met with the legal advisor to the Argentine Ministry of Foreign Affairs, after which the Nation of Argentina appeared in Pan American's second-filed Argentine action and attacked the jurisdiction of the Delaware courts.

5. The reason for that omission, Candlewood contends, is that Pan American did not inform the relevant Argentine governmental officials that Candlewood intended to seek only money damages relief.

Pan American has been a litigant in the United States, including in a Court of Chancery trial in which Pan American successfully defended a claim that it be required to post $41 million in collateral under an indemnity agreement.[6]

During the discovery proceedings that ultimately resulted in the decision on Pan American's motion to dismiss, Pan American submitted a single "Affidavit Re–Location and Access to Witnesses and Evidence." That affidavit identified no potential witnesses, documents, or evidence outside of Pan American's control, or any reason why Pan American would be unable to present factual evidence respecting damage to FSB's property through expert testimony, assisted by visual aids. The discovery also revealed that of the six Pan American employees who were identified as having the most knowledge about Pan American's activities on FSB's land, four had traveled internationally on business and three had traveled to the United States.

### Summary of the Court Of Chancery Opinion

In an opinion handed down on October 22, 2003, the Court of Chancery granted Pan American's motion to dismiss on the grounds of lack of subject matter jurisdiction and, alternatively, *forum non conveniens.*

As for subject matter jurisdiction, the Court held that none of Candlewood's claims was equitable in character and that although on its face the complaint purported to seek an equitable remedy—specific performance of Pan American's contractual obligation to purchase a policy insuring against damage to FSB's land—in reality,

Candlewood and FSB's claim was one at law for money damages. Because the harm to the land had already occurred, the remedy would have to take the form of a monetary award, whether or not Pan American had purchased an insurance policy. Therefore, because the complaint did not allege that the remedy at law was inadequate and specific performance was not necessary for the relief sought by Candlewood, the Court dismissed the complaint for lack of subject matter jurisdiction.

To summarize meaningfully the Court of Chancery's *forum non conveniens* rulings, it is helpful to discuss first the legal standard for dismissal under the *forum non conveniens* doctrine. Under Delaware law the moving party must demonstrate, with particularity, that being required to litigate in Delaware would subject it to overwhelming hardship. As this Court stated in *Warburg, Pincus Ventures, L.P. v. Schrapper:*

> Our jurisprudence is clear that a complaint will not be dismissed on the ground of *forum non conveniens* without a showing of overwhelming hardship. While this standard is not "preclusive," it requires a defendant to show that the case "is one of the rare cases where the drastic relief of dismissal is warranted based on a strong showing that the burden of litigating in this forum is so severe as to result in manifest hardship to the defendant."[7]

In assessing whether or not overwhelming hardship has been shown, Delaware courts employ an analysis predicated upon the six so-called *Cryo–Maid"* factors,[8] which are:

---

6. *Ins. Co. of the State of Pa. v. Pan Am. Energy, LLC,* C.A. No. 19629, 2003 WL 1432419 (Del. Ch. Mar. 19, 2003).

7. 774 A.2d 264, 267 (Del.2001) (footnotes omitted).

8. Referring to *Gen. Foods Corp. v. Cryo–Maid, Inc.,* 198 A.2d 681, 684 (Del.1964).

(1) the relative ease of access to proof;

(2) the availability of compulsory process for witnesses;

(3) the possibility of a view of the premises;

(4) whether the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction;

(5) the pendency or nonpendency of a similar action or actions in another jurisdiction; and

(6) all other practical problems that would make trial of the case easy, expeditious, and inexpensive.[9]

In its opinion, the Court of Chancery identified these legal standards accurately. The Court also appropriately framed the issue, as being "not whether Pan American has shown that Argentina is a better forum for the litigation, but whether Pan American has shown with particularity, through one or more of the *Cryo–Maid* factors, that litigating in Delaware constitutes an overwhelming hardship."[10] Having analyzed each of the *Cryo–Maid* factors, the Court of Chancery ruled that all of them favored Pan American, reasoning as follows:

Access To Proof: The Court found that (1) all the witnesses, physical evidence and documents relating to Pan American's defense are located in a remote area of Argentina, from which traveling to Delaware to litigate would be "extremely inconvenient;" (2) the five employees most knowledgeable of Pan American's activities in Argentina live in Argentina, speak minimal English, and are so critical to normal business operations that if those employees are required to travel to Delaware for trial, Pan American's business will suffer "significant disruption;" (3) the relevant documents are virtually all in Spanish and are in active use in Argentina; and (4) securing live testimony of the witnesses and producing English translations of the relevant documents in Delaware will entail "substantial burdens" to Pan American, and as a practical matter may cause Pan American to "suffer the deprivation of live testimony and, resultantly ... have difficulty presenting rebuttal testimony."[11]

Compulsory Process for Witnesses: The Court of Chancery found that it "may have limited powers to compel access to witnesses and documents," because although Argentina is a signatory to the Hague Convention To The Taking Of Evidence Abroad In Civil And Commercial Matters, the Argentine Republic will not execute Letters of Request for the purpose of obtaining pre-trial discovery of documents. Because of that reservation to the Hague Convention, the Court of Chancery stated that "Pan American may have no pre-trial discovery."[12]

View of The Premises: The Court of Chancery found that "the need to view the premises ... is greater" than in cases that do not involve injury to real property. Although video is a substitute, "it is only that—a substitute," for which reason (the Court concluded) "Pan American will clearly suffer difficulties if forced to litigate in Delaware because the finder of fact cannot view the premises."[13]

Delaware's Interest in the Litigation: The Court found Delaware's interest in a

---

9. *Warburg, Pincus,* 774 A.2d at 267; *Ison v. E.I. DuPont de Nemours & Co., Inc.,* 729 A.2d 832, 837–38 (Del.1999).

10. *Candlewood,* 2003 WL 22417235 at *3.

11. *Id.*

12. *Id.* at *4.

13. *Id.*

dispute over injury to land in Argentina is "minimal," but that:

> Argentina, as owner of all oil and gas resources in Argentina, has a bona fide interest in any compensation paid to FSB due to damage allegedly caused by Pan American's operations pursuant to extraction rights granted to it by Argentina. This interest is not speculative and is evidenced by the Nation of Argentina and Province of Salta's submissions before the Supreme Court of Argentina. A decision in this action will likely implicate Argentina's right to regulate access to surface property that lies above government owned oil and gas fields. Furthermore, a decision will implicate Argentina's economic interests because a decision adverse to Pan American may reduce the revenues Argentina derives from Pan American's extraction activities. [Given] the significant interests of Argentine governmental entities, the Argentine courts may have *exclusive* jurisdiction over this dispute ... [that] ... may independently deprive this Court of its jurisdiction. Regardless, Argentina's significant interest in this litigation and Delaware's limited interest in this litigation, counsels judicial discretion strongly in favor of dismissal.[14]

Other Pending Litigation: The Court found that an action "similar to this litigation" was pending before the Argentine courts, which are as fully capable as the Delaware courts of resolving disputes of this nature. Actually, the Argentine courts may be more capable (the Court of Chancery opined), since they can exercise jurisdiction over the Nation of Argentina and the Province of Salta.

Other Practical Problems: Lastly, the Court of Chancery identified a practical problem. FSB had previously executed and delivered to Pan American, Receipts for Indemnification in exchange for compensation that Pan American had paid to FSB for damage caused by its seismic surveying activity on FSB's property. The Receipts for Indemnification contained an exclusive Argentine forum selection clause. That created a practical problem, the Court of Chancery found, namely that because only the Argentine courts had jurisdiction over damage claims resulting from seismic activities, "it will be necessary to delineate clearly the line between the damage caused by the seismic activities and the damage caused by oil and gas extraction ....a complicated task that could prove unmanageable. Argentine courts would not face this same definitional problem and could hear all issues surrounding Pan American's activities."[15]

Taking these factors into consideration, the Court of Chancery concluded they showed, in the aggregate, that:

> [L]itigating this dispute in Delaware would constitute an overwhelming hardship to Pan American. Delaware has little or no interest in resolving this dispute. Plaintiffs purchased real estate in Argentina. They formed an Argentine entity to develop the resources located in Argentina. They negotiated and executed contracts in Argentina. The breach of these contracts, and the alleged tortious conduct attendant thereto, all occurred in Argentina. Argentine law will govern this dispute. Finally, Argentine governmental authorities have expressed a direct interest in this controversy. Litigating this matter in Delaware, rather than in Argentina, defies common sense.[16]

---

14. *Id.,* 2003 WL 22417235 at *5 (emphasis in original).

15. *Id.* at *6.

16. *Id.*

### The Subject Matter Jurisdiction Issue

The first issue raised on this appeal is whether the Court of Chancery erred in dismissing the complaint for lack of subject matter jurisdiction. On questions of subject matter jurisdiction, the applicable standard of review by this Court is whether the trial court correctly formulated and applied legal principles.[17] The scope of our review is de novo.[18]

■ As Delaware's Constitutional court of equity, the Court of Chancery can acquire subject matter jurisdiction over a cause in only three ways, namely, if: (1) one or more of the plaintiff's claims for relief is equitable in character,[19] (2) the plaintiff requests relief that is equitable in nature,[20] or (3) subject matter jurisdiction is conferred by statute. Here, as the Court of Chancery correctly observed, Candlewood asserts no equitable claims for relief, nor does it advance any claim under a statute that vests jurisdiction in the Court of Chancery. The only claims that Candlewood asserts are common law claims sounding in tort and contract. Accordingly, the sole basis for equitable jurisdiction is that Candlewood's complaint seeks equitable relief, viz, specific performance of Pan American's contractual obligation to obtain liability insurance covering damage caused to FSB's property by Pan American's extraction activities.

Although specific performance is an equitable remedy upon which equity jurisdiction might be predicated, that is true only if the complaint, objectively viewed, discloses a genuine need for such equitable relief. The fact that a complaint contains a prayer for an equitable remedy, without more, does not conclude the jurisdictional analysis. In deciding whether or not equitable jurisdiction exists, the Court must look beyond the remedies nominally being sought, and focus upon the allegations of the complaint in light of what the plaintiff really seeks to gain by bringing his or her claim.[21] To say it differently, the appropriate analysis requires a "realistic assessment of the nature of the wrong alleged and the remedy available in order to determine whether a legal remedy is available and fully adequate."[22]

Applying those principles to Candlewood's complaint, the Court of Chancery concluded that it did not have equitable subject matter jurisdiction, because the plaintiffs failed to allege that they had no adequate remedy at law, and also (and more importantly) because:

Even if the plaintiffs had alleged that they had an inadequate remedy at law, a realistic assessment of whether money damages are sufficient to remedy the alleged breach of contract demonstrates that such an allegation would be a fa-

**17.** Sanders v. Sanders, 570 A.2d 1189, 1190 (Del.1990).

**18.** Taylor v. LSI Logic Corp., 715 A.2d 837, 839 (Del.1998) (citing Sanders v. Sanders, 570 A.2d at 1190).

**19.** 10 Del. C. § 341 ("The Court of Chancery shall have jurisdiction to hear and determine all matters and causes in equity."); Monroe Park v. Metro. Life Ins. Co., 457 A.2d 734 (Del.1983).

**20.** 10 Del. C. § 342 ("The Court of Chancery shall not have jurisdiction to determine any matter wherein sufficient remedy may be had

by common law, or statute, before any other court or jurisdiction of this State."); Heathergreen Commons Condo. Ass'n. v. Paul, 503 A.2d 636 (Del.Ch.1985).

**21.** Diebold Computer Leasing, Inc. v. Commercial Credit Corp., 267 A.2d 586 (Del.1970); Hughes Tool, Co. v. Fawcett Publ'n Inc., 297 A.2d 428 (Del.Ch.1972), rev'd on other grounds, 315 A.2d 577 (Del.1974).

**22.** McMahon v. New Castle Assoc., 532 A.2d 601, 603 (Del.Ch.1987).

cade. The plaintiffs seek to require Pan American to purchase an insurance policy covering damage to their property, damage that has already been inflicted by Pan American's actions. Even if Pan American had such an insurance policy, it would presumably direct monetary payment to the plaintiffs if damage was done to the property-monetary payment that plaintiffs can recover as damages without resort to the extraordinary remedy of specific performance. In fact, the complaint itself demonstrates that there is an adequate remedy at law; the complaint seeks money damages for those harms that would have been covered by the insurance policy that Pan American allegedly never purchased. Because plaintiffs can adequately seek monetary damages in a court of law for Pan American's alleged breach of contract, this Court cannot grant specific performance and, hence, does not have jurisdiction to hear and decide this matter.[23]

We agree with that analysis. The Court of Chancery did not err in applying legal precepts or in concluding that it did not possess subject matter jurisdiction to adjudicate Candlewood's claim. Accordingly, if Delaware is a proper forum for this dispute, then the court that would have subject matter jurisdiction is the Superior Court.

That brings us to the second question, which is whether the Court of Chancery erred in determining, under *forum non conveniens* principles, that the only proper forum for this dispute is Argentina. We conclude, for the reasons next discussed, that the Court did so err.

### The Forum Non Conveniens Issue

This Court has repeatedly reaffirmed that a defendant that seeks the dismissal of a first-filed Delaware action on the ground of *forum non conveniens* "must establish with particularity that [it] will be subjected to overwhelming hardship and inconvenience if required to litigate in Delaware."[24] That standard imposes a "heavy burden" that a defendant will meet "only in a 'rare case.' "[25]

The Court of Chancery articulated the proper standard for a *forum non conveniens* dismissal, but it applied that standard incorrectly to the facts of the case, for three reasons. *First*, the Court imported into its analysis a consideration that is legally irrelevant and untethered to any hardship to Pan American. *Second*, the Court made *Cryo–Maid*–related factual findings that were not adequately supported by the record. *Third*, the record discloses no other basis to support a finding that Pan American would suffer overwhelming hardship if required to litigate in Delaware. To the contrary, the undisputed facts of record only further confirm that Pan American would not suffer any significant hardship.

1. *The Relative Interests of Argentina And Delaware in This Controversy*

The factor found to weigh most heavily in favor of the Court of Chancery's determination that litigating in Delaware would constitute an overwhelming hardship to Pan American, was that Argentina has a far greater interest in the controversy than does Delaware. The predominate

23. *Candlewood,* 2003 WL 22417235 at *2.

24. *Ison v. E.I. duPont de Nemours & Co.,* 729 A.2d 832, 838 (Del.1999); *Mar–Land Indus. Contractors, Inc. v. Caribbean Petroleum Ref., L.P.,* 777 A.2d 774, 778 (Del.2001); *Warburg, Pincus Ventures L.P. v. Schrapper,* 774 A.2d at

267; *Taylor v. LSI Logic Corp.,* 689 A.2d 1196, 1199 (Del.1997).

25. *Mar–Land,* 777 A.2d at 778 (quoting *Ison,* 729 A.2d at 842).

weight given that factor emerges clearly from the Court's opinion. Immediately after finding that overwhelming hardship had been established, the Court of Chancery (i) stated that "Delaware has little or no interest in resolving this dispute;" (ii) observed that all the parties, the contracts and the alleged wrongful conduct were located in or occurred in Argentina and that Argentina law would apply; and then (iii) concluded that "Argentine governmental authorities have expressed a direct interest in this controversy." [26]

The problem with this analysis is that factors that bear on choice of law or upon the relative interests of Delaware and Argentina in adjudicating this dispute have no logical relevance to the critical issue, which is whether Pan American will suffer overwhelming hardship if required to litigate in Delaware. Because the defendant has the burden to demonstrate "overwhelming hardship" from litigating a first-filed case in Delaware, this Court has previously held that "whether an alternative forum would be more convenient for the litigation, or perhaps a better location, is irrelevant[;]" [27] and that "the trial court is not permitted to compare Delaware, the plaintiff's chosen forum, with an alternate forum and decide which is the more appropriate location for the dispute to proceed." [28] That is what prompted this Court, in *Mar–Land Industries Contractors, Inc. v. Caribbean Petroleum Refining, L.P.*, to reverse a dismissal on *forum non conveniens* grounds, and to hold that

"the Superior Court improperly weighed the plaintiff's chosen forum versus the defendant's preferred forum, a balancing analysis not contemplated by this Court's *forum non conveniens* jurisprudence." [29]

Even if Argentine law is found to be applicable, "the application of foreign law is not sufficient reason to warrant dismissal under the doctrine of *forum non conveniens.*" [30] In *Warburg, Pincus Ventures v. Schrapper,* this Court rejected the argument that "some lesser hardship standard applies" where the plaintiff is not a Delaware citizen and where "the defendant's 'only connection' to Delaware is its status as a Delaware business entity." [31] Affirming the denial of a *forum non conveniens* motion, the *Warburg* Court found that the defendant "had not established with particularity that it would face overwhelming hardship if required to litigate in Delaware[,]" observing that:

> All of the activities that are the basis of [plaintiff's] complaint occurred outside of the United States. The negotiations between the parties took place in Germany and England, which is also where . . . all of the evidence is located. Similarly, [plaintiff's] alleged damages involve interference with his relationships with various German entities. . . . Warburg argues . . . that either German law or possibly English law would apply to this action. . . . [32]

By injecting an irrelevant factor into the *forum non conveniens* analysis, the Court

**26.** *Candlewood,* 2003 WL 22417235 at *6.

**27.** *Mar–Land,* 777 A.2d at 779.

**28.** *Id.,* 777 A.2d at 781 ("the Superior Court improperly weighed the plaintiff's chosen forum versus the defendant's preferred forum."); *Taylor,* 689 A.2d at 1197 (holding that the trial court improperly dismissed on grounds that a foreign court "would be a 'more appropriate forum' ").

**29.** *Mar–Land,* 777 A.2d at 781.

**30.** *Taylor,* 689 A.2d at 1200.

**31.** 774 A.2d at 268, 269.

**32.** 774 A.2d at 267.

of Chancery lowered the applicable standard. It also minimized a significant Delaware interest in the lawsuit, which is to make available to litigants a neutral forum to adjudicate commercial disputes against Delaware entities, even where the dispute involves foreign law and the parties and conduct are centered in a foreign jurisdiction. Where, as here, the Delaware action is first-filed, our jurisprudence views that interest to be sufficiently important as to impose upon the moving defendant the "heavy burden" of demonstrating overwhelming hardship from being required to litigate in Delaware.[33]

The governmental interests of Argentina would be a relevant factor had Pan American moved to dismiss under Chancery Court Rule 19, on the basis that the Argentine governmental entities are indispensable parties, such that Pan American would be prejudiced if this case proceeded in Delaware without the presence of those Argentine governmental entities. Pan American did advance the argument that the Argentine courts have exclusive jurisdiction, and both sides briefed that issue; but rather than decide that jurisdictional issue directly, the Court of Chancery folded that question into the "Delaware interest in the litigation" factor of its *forum non conveniens* analysis.

It is within that framework that the Court of Chancery concluded that for it to entertain this breach of contract and tort action against a private party, "will likely implicate Argentina's right to regulate access to surface property ... [and] ... will implicate Argentina's economic interests," and also that "[b]ecause of the significant interests of Argentine governmental entities, the Argentine courts _may_ have _exclusive_ jurisdiction over this dispute ... [that] _may_ independently deprive this Court of its jurisdiction."[34] Because that concern was untethered to any asserted hardship to Pan American, overwhelming or otherwise, the Court of Chancery erred by injecting the exclusive jurisdiction issue into a *forum non conveniens* analytic framework.

### 2. Erroneous Cryo–Maid Factual Findings

In its opinion the Court of Chancery considered and assessed the six factors prescribed by *Cryo–Maid* and its progeny, that are legally relevant to a *forum non conveniens* analysis. Regrettably, the Court's conclusions relating to several of those factors were based upon conclusory affidavits that Pan American had submitted. The Court's conclusions failed to take into account controverting evidence submitted by Candlewood as well as critical admissions by Pan American. This Court will not upset a trial court's factual findings if they are supported by the record

---

**33.** The Court of Chancery relied in part upon *IM2 Merchandising & Mfg., Inc. v. Tirex Corp.*, C.A. No. 18077, 2000 WL 1664168 (Del.Ch. Nov.2, 2000). That case, which was decided before *Warburg, Pincus* and *Mar–Land*, was cited by the Court of Chancery for the proposition that "Argentina's significant interest in this litigation, and Delaware's limited interest ... counsels judicial discretion strongly in favor of dismissal." *Candlewood*, 2003 WL 22417235 at *5. But *IM2* turned less on the interests of a foreign forum than on the financial hardship facing the Quebec-based defendant, which had "lost a good deal of money and [was] apparently in default of its tax obligations," and could not "easily bear" the "markedly increased" costs of litigating in Delaware. *IM2*, 2000 WL 1664168 at *9. Pan American faces no such hardship, and it admittedly "does not contend that it would be an undue hardship for some of its employees to travel to the United States." Def.'s Resp. to Pl.'s First Set of Interrogs., Appellant's Appendix at 339.

**34.** 2003 WL 22417235 at *5 (italics in original, underscoring added).

and are the product of an orderly and logical deductive process.[35] Here, several of the Court of Chancery's critical findings were not adequately supported by the record and, thus, were erroneous.

### ● *Access To Proof*

Relying solely on two paragraphs in an affidavit describing the location of certain Pan American employees and documents, the Court of Chancery found that Pan American's expected defense would depend on "witnesses, physical evidence and documents ... located in a remote area of Argentina;" that travel for these witnesses to Delaware for trial would be "extremely inconvenient" and cause Pan American to "suffer significant disruption;" and that producing English translations of relevant documents in Delaware "will entail substantial burdens to Pan American" and *may* cause Pan American to "suffer the deprivation of live testimony" and to "have difficulty presenting rebuttal testimony."[36]

■ These findings lack proper record support, and they ignore admissions by Pan American that significantly, if not fatally, undercut Pan American's assertions. Pan American's affidavit amounts essentially to bare conclusions that do not constitute a "particularized showing that witnesses, documents, or other evidence necessary to defend the allegations contained in [Candlewood's] complaint cannot be brought to or otherwise produced in Delaware."[37] Pan American did not identify any damages evidence that could not be assimilated and presented in Delaware by an expert. Nor did Pan American show why it needs any fact testimony (whether live or by deposition) from any Pan American employee con-

cerning the effect of its extraction activities upon FSB's land.

The Court of Chancery's findings also do not take into account admissions by Pan American that significantly undercut its assertions of hardship. In its response to interrogatories, Pan American admitted that "it does not contend that it would be an undue hardship for some of its employees to travel to the United States."[38] Pan American also admitted that four of the six employees referenced in its affidavit as most knowledgeable, had traveled internationally on business in recent years, and that three had traveled to the United States. Finally, Pan American admitted that it customarily enters into contracts that include forum selection clauses that require it to litigate in the United States and the United Kingdom, and that recently it had defended a case in the Court of Chancery. The Court of Chancery's opinion does not come to grips with, or acknowledge, those admitted facts.

### ● *Availability of Compulsory Process*

■ Regarding this factor, the Court found that "[a]s a result of Argentina's reservation to the Hague Convention, Pan American may have no pre-trial discovery." Aside from the fact that Pan American never made that argument in the Court of Chancery (and its brief on appeal cites no record evidence to support this claim), Pan American never identified any potential witnesses or documents that are not under its control, or any third party witness in Argentina or elsewhere from whom it would wish to obtain discovery. Nor did Pan American suggest that there exists potential evidence in Argentina or elsewhere that Pan American might want

---

**35.** See *Moss v. Prudential–Bache Sec., Inc.,* 581 A.2d 1138, 1139–40 (Del.1990).

**36.** *Candlewood,* 2003 WL 22417235 at *3–6.

**37.** *Mar–Land,* 777 A.2d at 781.

**38.** *See,* note 33, *supra.*

or be unable to obtain in discovery. Consequently, there is no identified record support for the Court of Chancery's finding that Pan American "may have no pretrial discovery."

### ● View of the Premises

■ Although Candlewood attached to its complaint its expert's reports that contain various charts and drawings, Pan American asserted in the Court of Chancery, and urges on this appeal, that this action "unquestionably requires that the finder of fact undertake an up close and detailed view of the premises at issue." [39] Pan American did not explain how its expert or factual presentation would be inhibited by the absence of a view of the premises, or how an "up close and detailed view" would help the Court assess how many hundred acres of forest were taken out of production, or how many hundreds of thousands of square meters of earth were excavated. Pan American also made no effort to explain why video technology and other visual aids would be less informative than an in-person expedition.

Despite the lack of a particularized record on these issues, the Court of Chancery appears to have accepted uncritically Pan American's assertion that "this factual dispute cannot come to resolution without a view of the premises and, therefore, it will suffer overwhelming hardship if forced to litigate here." [40] Neither Pan American nor the Court cited any case in which forced reliance on video or other visual aids, in lieu of a personal inspection, was found to constitute a hardship. [41] The Court's finding on this factor lacks evidentiary and legal support.

### ● Whether The Controversy is Dependent Upon The Application of Delaware Law

■ The fourth *Cryo–Maid* factor is "whether the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction." [42] This factor weighs slightly, although not significantly, in Pan American's favor. The Court of Chancery found that Argentine law would apply to Candlewood's claims. [43] Candlewood disputes that finding, but even if Delaware law were applicable, it has not been shown that this case depends upon the application of Delaware law that more properly should be decided by Delaware courts. On the other hand, if Argentine law is found to apply, that alone "is not sufficient reason to warrant dismissal under the doctrine of *forum non conveniens.*" [44]

Pan American has failed to articulate any hardship that would result from a Delaware court applying Argentine law. The expense and inconvenience of translating pertinent legal precedent, of retaining foreign lawyers, and of producing foreign law experts to testify at trial, has not been shown to be of material weight in an overwhelming hardship analysis in this particu-

**39.** Appellee's Ans. Br. at 19.

**40.** *Candlewood,* 2003 WL 22417235 at *4.

**41.** The Court of Chancery relied upon a pre-video-era case, in which a jury's view of real property years after its condemnation was deemed to be not misleading and prejudicial and a "valuable aid," chiefly because the jury otherwise would have "had to guess as to the surroundings and the neighborhood." *Woodlands Cemetery Co. v. U.S.,* 110 F.Supp. 704, 706 (E.D.Pa.1953).

**42.** *Ison,* 729 A.2d at 838.

**43.** *Candlewood,* 2003 WL 22417235 at *4, n. 30.

**44.** *Taylor v. LSI Logic, Corp.,* 689 A.2d at 1200; *Ison,* 729 A.2d at 838.

lar case.[45] Accordingly, this factor, although favoring Pan American, falls far short of satisfying the standard for a *forum non conveniens* dismissal.

- *Lack of A Prior Pending Action*

■ Although the Court of Chancery found that "an action similar to this litigation . . . [is] . . . pending before the Argentine courts,"[46] the record shows that the Pan American lawsuits pending in Argentina are not "similar." No action was "pending" in Argentina at the time Candlewood filed this Delaware action asserting common law tort and contract claims for damage to property. Pan American's second-filed action in the Argentina Supreme Court does not seek a declaration to the contrary, *i.e.*, that it is *not* liable to Candlewood for property damage. Pan American's lawsuit seeks only a declaration that its dispute with Candlewood is subject to the exclusive jurisdiction of specified Argentine courts.

Pan American's second Argentine lawsuit does not implicate Candlewood's Delaware claims either, because (i) that action does not seek a declaration of non-liability for damage to land resulting from expropriation, (ii) that action seeks only a partial court-ordered expropriation of FSB's land, and (iii) even if expropriation relief were granted, that would not affect Candlewood's claims, all of which would have arisen pre-expropriation. Thus, the Court's finding of an action "similar to this litigation" pending in Argentina lacks support in the record.

- *Other Practical Problems*

The "practical problem" identified by the Court of Chancery is that it will be difficult to distinguish between the extraction-related property damage claimed by plaintiffs in this action and the property damage resulting from Pan American's seismic activities for which FSB has already been compensated and given a release. That factor favored the Argentine forum, the Court of Chancery found, because Argentine courts would not face that definitional problem, whereas a Delaware court would.

That conclusion is erroneous, because whichever court hears and decides Candlewood's claims, whether in Delaware or Argentina, will be required to engage in the task of delineating between the two different sources of damage. This practical problem, to the extent it exists, does not depend on the locus of the litigation. That is, if this constitutes a hardship to Pan American (or to anyone else), it is not a hardship that results from litigating in Delaware. Accordingly, the finding that this factor favored Argentina rests on an incorrect premise.

For these reasons, the Court of Chancery's assessment of the *Cryo–Maid* factors, and its conclusion that those factors establish overwhelming hardship, are not adequately supported by the record.

3. *The Absence Of A Showing Of Overwhelming Hardship*

■ Although the foregoing analysis would be a sufficient basis, in and of itself, to conclude that Pan American failed to meet its *forum non conveniens* burden, we have searched the record for other significant evidence of hardship, but have found none. Indeed, all the relevant evidence points to the conclusion that Pan American is in no position to argue that being required to litigate in Delaware would inflict a hardship upon it.

---

**45.** See *Warburg, Pincus,* 774 A.2d at 271.

**46.** *Candlewood,* 2003 WL 22417235 at *5.

Pan American is a corporation with vast economic resources. It engages in operations on an international scale. As previously noted, Pan American's operations cause it frequently to enter into oil and gas supply contracts that contain forum selection clauses which require Pan American to litigate in the United States. Those facts are flatly inconsistent with Pan American's claim of hardship, as is the fact that Pan American recently defended a litigation in the Court of Chancery.

\*\*\*

As earlier noted, it is our view that the real "driver" of the result reached by the Court of Chancery is the possibility that the Argentine courts have exclusive jurisdiction over the subject matter of the Delaware action. The parties argued both sides of that issue before the Court of Chancery and this Court. Had the Court of Chancery addressed this issue directly, as distinguished from treating it as a *Cryo–Maid* factor within the framework of a *forum non conveniens* analysis, a decision on that question, if favorable to Pan American's position, would have constituted an independent basis for dismissing the action.

Normally, we would remand the case to the trial court to decide that question in the first instance. But because all parties ask this Court to decide whether subject matter jurisdiction is concurrent or is vested exclusively in the Argentine courts, and because that issue is one of law and if resolved in favor of Pan American would result in an affirmance, we decide that question in the interests of judicial economy.[47]

### The Exclusive Jurisdiction Issue

In limited circumstances as discussed below, Delaware courts will not exercise subject matter jurisdiction over a dispute that is predicated on foreign law where the foreign state has vested jurisdiction exclusively in its own courts.[48] The issue is whether Argentina has vested jurisdiction over this particular kind of dispute exclusively in its own courts. Pan American argues that Argentina has done that, because: (1) the Argentine Constitution vests exclusive jurisdiction in its courts over actions where the Argentine Nation or a Province is a party; (2) Argentine law vests exclusive jurisdiction in its courts (a) over disputes concerning real property, and (b) over disputes involving issues of environmental protection, especially where the rights and obligations of an oil and gas concessionaire are implicated; and (3) the dispute implicates issues of public policy which demand that exclusive jurisdiction be in Argentina.

On the question of whether exclusive jurisdiction has been vested in the Argentine courts, Pan American, as the proponent of that contention, has the burden of persuasion. We conclude that none of Pan American's arguments has merit and that Pan American has not met its burden. We further conclude that the claims for relief being asserted by Candlewood in Delaware are transitory claims that have not been localized under Argen-

47. This Court may decide any issue fairly presented to the trial court and a question not so presented if the interests of justice require review. Supr. Ct. R. 8; *Standard Distrib. Co. v. Nally*, 630 A.2d 640, 647 (Del.1993).

48. See *Taylor v. LSI Logic Corp.*, 715 A.2d 837 (Del.1998); see also *Ison v. E.I. DuPont de Nemours & Co., Inc.*, 729 A.2d 832, 838, n. 14 (Del.1999) (in *Taylor v. LSI Logic Corp.*, "[t]his Court affirmed the dismissal ... finding that the Canadian law at issue actually required *adjudication* in a Canadian Court, leaving the Court of Chancery with no subject matter jurisdiction.")

tine law, and over which the courts of Delaware have concurrent jurisdiction.

### 1. *The Demerit of Pan American's Exclusive Jurisdiction Arguments*

Pan American first argues that Article 117 of the Argentine Constitution confers *ab initio* jurisdiction to hear and decide all disputes involving the Argentine national government or a Province thereof. Even if correct, that proposition has no relevance to this Delaware action, because no claims are being asserted in Delaware against the Argentine national government or the Province of Salta. Nor does Pan American claim that those Argentine governmental entities are indispensable to a just adjudication of Candlewood's claims, within the meaning of Court of Chancery Rule 19.[49]

Similarly irrelevant is Pan American's second argument, which is that Argentine law vests exclusive jurisdiction in its courts over disputes concerning real property and disputes involving issues of environmental protection. That argument is not analytically helpful, because this dispute is about compensation for harm to privately-owned land, not about ownership rights to real property or issues involving protection of the environment. As set forth in Section 87 of the *Restatement (Second) Conflict of Laws* (1971), "[a] state may entertain an action that seeks to recover compensation for a trespass upon or harm done to land in another state." Comment a to that Section explains that "[s]uch an action does not seek to affect title to foreign land, as would a bill to quiet title[.]"[50]

Finally, Pan American relies upon a theory of its foreign law expert, Dr. Horacio A. Grigera Naón, that there are issues of public policy implicated in this dispute that require exclusive jurisdiction in Argentina. Dr. Naón's opinion, however, is disputed by an equally plausible opinion articulating the contrary view. According to Professor Litvinoff, there are no principles of public policy that affect the parties' legal rights, but even in cases that do involve the Argentine public interest, "this does not mean that the jurisdiction of Argentine courts is exclusive; thus, the fact that rules of public policy must be applied in the resolution of a particular case does not negate the existence of concurrent jurisdiction in other courts[.]"[51] Given these disputed expert opinions and Pan American's inability to cite any Argentine legal authority supportive of its position—in-

---

49. According to the unrebutted Affidavit of Professor Saul Litvinoff, one of Candlewood's foreign law experts, under Argentine law the Argentine nation or an Argentine province can only be made a party to litigation if they have "a direct, substantial and immediate interest in the merits of the litigation involved. A formal or indirect interest will not suffice." (Litvinoff Supplementary Aff., ¶¶ 3, 5). According to Professor Litvinoff, the Argentine government has no such direct, substantial or immediate interest, because this dispute does not involve title to minerals owned by the government, the government will not be directly affected by a money judgment against Pan American, and resolution of the dispute is based on clear rules of law, not discretionary principles of public policy. (*Id.*, at ¶¶ 5, 9).

50. Consistent with the *Restatement* rule is Professor Litvinoff's affidavit testimony that under the Argentine Civil Code, "an action by the owner of immovable property against an oil and gas concessionaire for trespass, damage to property, or breach of contract can be brought in Argentina or abroad." (Litvinoff Supplementary Aff., ¶ 7). Pan American argues that ownership of an oil or gas concession is a "real" or "in rem" right, but this case does not involve Pan American's or FSB's title. While FSB owns real property, what is principally at issue here is compensation for damage to trees, use of earth, and interference with the plaintiffs' sustainable forestry business.

51. *Id.*, at ¶ 10.

cluding any statute that purports to localize the claims being asserted here in the Argentine courts—we conclude that Pan American has not met its burden of establishing that jurisdiction over this dispute has been vested exclusively in the Argentine courts.

### 2. Delaware's Concurrent Jurisdiction Over The Plaintiffs' Transitory Causes of Action

Our conclusion does not rest solely upon Pan American's failure to carry its burden, however. The facts of record in this case, and the rules of law applicable thereto, affirmatively establish that Candlewood's claims against Pan American are transitory. By definition a transitory claim is one that can be brought in the jurisdiction where a defendant resides, in this case, Delaware.

As stated in Professor Moore's treatise, "[an] action is transitory, even though it may affect land, if the type of relief requested is personal in nature so that the court acts on the defendant's person or personal property, which is within its control, and not directly on the lands involved.... [M]ost types of actions are considered transitory even though the outcome of the litigation may affect property." [52] Consistent with that fundamental principle is the uncontroverted opinion testimony of Arthur Taylor Von Mehren, Sto-

ry Professor of Law *Emeritus* at Harvard Law School. Professor Von Mehren states that the "contract and tort claims pled by the plaintiffs are today considered transitory in nature," [53] and that "[n]o contemporary legal order's law of contract or tort seeks to localize in principle actions sounding in tort or contract." [54]

Pan American does not straightforwardly confront this issue or address that analysis. Instead, it contends that this dispute is akin to that involved in *Taylor v. LSI Logic Corp.*, where this Court held that a Canadian statute (Section 241 of the Canada Business Corporations Act) which provided an "oppression remedy" for minority stockholders and authorized suit only in specified Canadian courts, deprived the Delaware courts of subject matter jurisdiction to grant the requested equitable relief that the plaintiff was seeking under that statute.[55] We disagree. *Taylor* undercuts Pan American's case rather than supports it.

*Taylor* is properly analyzed within the framework of the general rule that was first articulated in 1914 in *Tennessee Coal, Iron & R.R. Co. v. George.*[56] The issue in *Tennessee Coal* was whether an injured employee could bring suit against his employer in Georgia, under an Alabama statute that created tort liability for an employer if the employee suffered injury due

---

**52.** *Moore's Federal Practice,* ¶ 110.20[2] (3rd ed. 2002).

**53.** Affidavit of Arthur T. Von Mehren, ¶ 12; *accord, Forest Products Co. v. Magistrelli,* 14 A.2d 397, 400 (Del.Super.1940) ("An action to recover damages for breach of contract is transitory[.]"); Eugene F. Scoles, et. al., *Conflict of Laws* 368 (3rd ed. 2000) (stating that jurisdiction over tort claims respecting injury to real property "exists in the state that is the situs of the realty, and other states with which the defendant has a purposeful, related connection.")

**54.** Von Mehren Aff., ¶ 23. Consistent with Professor Von Mehren's testimony on that point is that of Professor Litvinoff, who states that damage claims for breach of contract, tort and restitution under the Civil Code of Argentina against a private entity are similarly transitory. (Litvinoff Aff., ¶¶ 7–9; Litvinoff Supplementary Aff., ¶¶ 3–5).

**55.** 715 A.2d 837, 842 (Del.1998).

**56.** 233 U.S. 354, 34 S.Ct. 587, 58 L.Ed. 997 (1914).

to defective machinery. The Alabama statute also provided that relief under the statute could only be sought in an Alabama court. The United States Supreme Court held that the employee could bring suit under the statute in Georgia, because "the place of bringing the suit is not part of the cause of action—the right and remedy are not so inseparably united as to make the right dependent upon its being enforced in a particular tribunal."[57] Observing that for various practical reasons a plaintiff might want to bring suit "in a state other than where the injury was inflicted," the Court held that:

> "[A] state cannot create a transitory cause of action and at the same time destroy the right to sue on that transitory cause of action in any court having jurisdiction. That jurisdiction is to be determined by the law of the court's creation and cannot be defeated by the extraterritorial operation of a statute of another State, even though it created the right of action."[58]

In *Taylor* this Court found that the general rule of *Tennessee Coal* did not apply, because "the oppression remedy in Section 241 [was] purely a legislatively created statutory remedy,"[59] and "it was the intent of the [Canadian] Parliament that actions brought under Section 241 of the Canada Business Corporations Act be brought only in the courts of Canada identified in Section 2 of the Canadian Act."[60] That is, in *Taylor*, the right and the remedy were found to be so inseparably intertwined that equitable relief under the statute could only be obtained from one of the specific Canadian tribunals mandated in the statute. That is not the case here.

This case requires the application of the general rule of *Tennessee Coal* rather than the analysis applied in *Taylor*. Here, unlike *Taylor* (or, for that matter, unlike *Tennessee Coal*), the plaintiffs here are asserting claims arising under common law, not under an Argentine statute that purports to localize those claims exclusively within the Argentine court system. Moreover, here the plaintiffs' causes of action are not (as was found to be the case in *Taylor*) so inseparably intertwined with a statutorily-created remedy that the right can be enforced only in the statutorily-mandated tribunal.

This case is more akin to *Randall v. Arabian American Oil Co.*,[61] where the plaintiff brought a claim in the United States District Court for wrongful discharge from his employment with a Saudi Arabian oil company. Rejecting the argument that the Saudi Arabian Labor Law vested exclusive jurisdiction over such claims in the Saudi Arabian courts, the Fifth Circuit described the claim as "a classic example of a transitory cause of action that may be enforced in any foreign court having subject matter and *in personam* jurisdiction," and it held that:

> It stands to reason that if the Full Faith and Credit Clause of the United States Constitution, which is the Supreme Law of the land, does not compel one state from recognizing the exclusive jurisdiction provisions of a sister state, then we see little or no reason why in a transnational case, such as this, where no higher positive law binds us, we should be compelled to give effect to a foreign state's exclusive jurisdiction provision.[62]

---

**57.** *Id.* at 359, 34 S.Ct. 587.

**58.** *Id.* at 360, 34 S.Ct. 587.

**59.** *Taylor,* 715 A.2d at 840, n. 13.

**60.** *Id.* at 841.

**61.** 778 F.2d 1146 (5th Cir.1985).

**62.** *Id.* at 1153.

For these reasons, we conclude that the claims being asserted here, although not sufficient to confer equitable jurisdiction, are by their nature transitory, and therefore are properly brought in the Superior Court of the State of Delaware.

### Conclusion

For the foregoing reasons, the judgment of the Court of Chancery is affirmed in part, reversed in part, and remanded with instructions that the case be transferred to the Superior Court under 10 *Del. C.* § 1902.