OF THE
STATE OF DELAWARE

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY
COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE
19947

Date Submitted: February 27, 2024
Date Decided: May 23, 2024

Kasey H. DeSantis, Esq.
FOX ROTHSCHILD LLP
919 North Market Street, Suite 300
Wilmington, Delaware 19801

Rudolf Koch, Esq.
Matthew D. Perri, Esq.
Kevin M. Kidwell, Esq.
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801

J. Clayton Athey, Esq.
Seth T. Ford, Esq.
PRICKETT, JONES & ELLIOTT, P.A.
1310 North King Street
Wilmington, Delaware 19801

Re: *Maka v. Musial, et al.*, C.A. No. 2023-0722-SG

Dear Counsel:

Before me are Defendants' Motions to Dismiss for failure to state a claim.

This Court's jurisdiction is straitened, however; I must first, as in every matter before

the Court, examine whether subject matter jurisdiction exists. Upon review, I find

that it does not. My reasoning is below.

## I. Background

### A. Factual Background

The present action arises from a dispute between two former business partners, with John Maka ("Plaintiff") bringing the action against David Musial, Four Seasons Heating & Air Conditioning, LLC ("FS Heating, LLC") and Four Seasons Home Services LLC ("FS Home Services LLC" and with Musial and FS Heating, LLC, collectively, the "Defendants"). The dispute stems from a series of events surrounding the sale discussions involving the parties' underlying companies, Four Seasons Heating & Air, Inc. ("FS Heating, Inc."), and FS Home Services, LLC (collectively, the "Companies").

To limn the parties dispute briefly, in late 2021, Musial represented to Plaintiff that a third party was interested in purchasing the Companies for approximately $200 million.[1] Plaintiff agreed to relinquish his ownership interests in the Companies to facilitate the sale.[2] However, it later emerged that Musial did not proceed with a sale to a third party; instead, Musial purchased Plaintiff's interests in the Companies and retained sole ownership and control over the Companies.[3]

To address Musial's actions, Plaintiff and Musial entered into a settlement agreement ("Settlement Agreement").[4] The Settlement Agreement obligated Musial

---

[1] Verified Compl. ¶ 2, Dkt. No. 1 (the "Compl.")
[2] *Id.* ¶¶ 3, 20.
[3] *Id.* ¶¶ 3, 24.
[4] *Id.* ¶ 27; *see also* Compl., Ex. B, Dkt. No. 1.

to pay Plaintiff $13,000,000 and provided for potential future payments of up to 50% of the net proceeds from any subsequent sale of the Companies, less the $13 million already paid to Plaintiff.[5]

In October 2022, a third party expressed interest in purchasing FS Heating, Inc. for $487.5 million.[6]  Musial informed Plaintiff of the potential transaction, stressing that time was of the essence.[7]  In connection with the transaction, Musial sent to Plaintiff's counsel a draft Payoff, Release, and Restrictive Covenant Agreement ("Payoff Agreement") and a draft Amendment to the Settlement Agreement (the "Amendment") for Plaintiff's review.[8]  The Payoff Agreement required that, in connection with the closing of the sale, an identified amount of money was to be paid to Plaintiff.[9]  The Amendment modified the Settlement Agreement, assigning the rights and obligations thereunder from Musial to FSHC and required that FSHC make any requisite payment to Plaintiff in the event of a Liquidity Event.[10] According to Plaintiff, he entered these agreements conditioned on receiving documentation of his payout amount.[11]  Despite Plaintiff's repeated

---

[5] Compl. ¶ 28.
[6] *Id.* ¶ 29.
[7] *Id.* ¶ 31.
[8] *Id.* ¶¶ 32–33.
[9] *Id.* ¶ 34.
[10] *Id.* ¶ 33.
[11] *Id.* ¶¶ 37, 40–41.

requests, Musial refused to provide closing documents necessary for evaluating the payout amount accurately,[12] leading to the present dispute.

*B. Procedural Background*

Plaintiff initiated this action against Defendants and filed the operative complaint on July 17, 2023 (the "Complaint").[13]  The Complaint contains six causes of actions including fraud; duress; lack of consideration; breach of contract; breach of fiduciary duty; and equitable accounting.[14] The last two, obviously, facially invoke equity.  On August 14, 2023, Defendants FS Heating, LLC and FS Home Services, LLC (collectively, "Four Seasons") moved to dismiss the Complaint under Court of Chancery Rule 12(b)(6).[15]  On August 15, 2023, Defendant David Musial filed a moved to dismiss the Complaint under Court of Chancery Rule 12(b)(6).[16] On February 27, 2024, I heard oral arguments on Defendants' motions to dismiss.[17]

[12] *See id.* ¶¶ 37, 42, 47–48, 53.
[13] *See id.*
[14] *Id.* ¶¶ 65–95.
[15] *See* Defs. Four Seasons' Mot. to Dismiss, Dkt. No. 7.
[16] *See* Def. Musial's Mot. to Dismiss, Dkt. No. 8.
[17] *See* Judicial Action Form re Mots. to Dismiss and Stay Disc. before Vice Chancellor Glasscock dated 2.27.24, Dkt. No. 44.

## II.  **Analysis**

*A. Standard of Review*

When reviewing such motion to dismiss under Court of Chancery Rule 12(b)(6),

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and [(iv)] dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[18]

I need not, however, "accept conclusory allegations unsupported by specific facts, nor . . . draw unreasonable inferences in" favor of the non-moving party.[19]  Before proceeding to consider the Defendants' motions, however, I must as in any case determine whether I have subject matter jurisdiction to entertain the action.

The Court of Chancery is a court of limited jurisdiction.[20]  As such, this Court "can acquire subject matter jurisdiction over a cause in only three ways, namely, if: (1) one or more of the plaintiff's claims for relief is equitable in character, (2) the plaintiff requires relief that is equitable in nature, or (3) subject matter jurisdiction is conferred by statute."[21]  Here, Plaintiff seeks to invoke this Court's equitable

---

[18] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (footnotes and internal quotation marks omitted).

[19] *Windsor I, LLC, v. CWCapital Asset Mgmt. LLC*, 238 A.3d 863, 871 (Del. 2020) (internal quotation marks omitted).

[20] *El Paso Natural Gas Co. v. TransAmerican Natural Gas Corp.*, 669 A.2d 36, 39 (Del. 1995).

[21] *Candlewood Timber Gp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004).

jurisdiction to obtain an equitable remedy, specifically an order for equitable accounting resulting from an equitable cause of action, a breach of fiduciary duty. Those are the sole grounds by which he seeks to maintain a suit in equity.[22] "Equitable jurisdiction must be determined from the face of the complaint as of the time of filing, with all material factual allegations viewed as true."[23] In determining jurisdiction, this Court "will take a practical view of the complaint, and will not permit a suit to be brought in Chancery where a complete legal remedy otherwise exists but where the plaintiff has prayed for traditional equitable relief as a kind of formulaic 'open sesame' to the Court of Chancery."[24]

### 1. Breach of Fiduciary Duty

"A claim for breach of fiduciary duty requires proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty."[25] Here, Plaintiff failed to sufficiently plead that a fiduciary duty existed between the parties. It is axiomatic that where a relationship is established and cabined by a contract, a damages action for its breach sounds in contract.[26] I assume that the parties were involved, originally, in a *de facto* partnership involving the two underlying entities.

---

[22] While the Complaint is not explicit in this regard, counsel at oral argument clarified that equitable jurisdiction, per Plaintiff, inhered in the relationship between the principals, post Settlement Agreement. *See* Tr. of 2-27-2024 Oral Args. on Am. Mot. to Dismiss and Mot. to Stay Disc. 65:2–68:10, Dkt. No. 47.

[23] *Int'l Bus. Machs. Corp. v. Comdisco, Inc.*, 602 A.2d 74, 78 (Del. Ch. 1991).

[24] *Id.*

[25] *Beard Rsch, Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch. 2010).

[26] *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010).

Such a partnership would give rise to mutual fiduciary duties between the partners.[27] However, in this case, the parties' fiduciary duties ceased to exist once Plaintiff sold and relinquished his equity interest in the Companies to Musial, and then settled any disputes arising from the sale in the Settlement Agreement. What is left is an arm's-length contractual relationship between the parties. There is nothing in the subsequent agreements between the parties that would indicate that the parties had a special relationship of trust. Nor did the parties share a common goal that could imply a reliance in equity.[28]

In bringing this suit, Plaintiff's goal is damages resulting from the beach of various contracts (or related legal torts) resulting from the sale of his equity to Musial. While an action for breach of fiduciary duty is inherently equitable and, if well-pled, conveys jurisdiction on this Court, Plaintiff's supposed breach of fiduciary duty claim, at its core, is a claim for a breach of *contractual* duties, for which damages, if merited, are fully available at law. Thus, I find that Plaintiff has failed to establish subject matter jurisdiction under the theory that he has pled a breach of fiduciary duty.

---

[27] 6 *Del. C.* § 15-401.

[28] A threshold requirement of a special, fiduciary-like, relationship is an alignment of interests. *See*, *e.g.*, *Tr. Robin, Inc. v. Tissue Analytics, Inc.*, 2022 WL 4545174, at *3–4 (Del. Ch. Sept. 29, 2022) (assessing the existence of a special relationship in the equitable fraud context). In a true fiduciary relationship, this mere alignment is replaced by the fiduciary's duty to protect the beneficiary's interests. *See Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 113 (Del. 2006).

2. Equitable Accounting

As part of Plaintiff's breach-of-fiduciary-duty count, Plaintiff requests that this Court order Defendants to provide an equitable accounting. Equitable accounting is an equitable remedy by which a fiduciary may be caused to account for property subject to trust.[29] Since I have already concluded above that the relationship between Plaintiff and Defendants *ad litem* is that of contractual counterparties, not beneficiary and fiduciary, there is no basis in the facts pled supporting an equitable accounting. Having found that Plaintiff's breach of fiduciary duty claim fails to support jurisdiction, Plaintiff's request for an equitable accounting necessarily fails accordingly.

*B. Clean-Up Doctrine*

The remaining claims asserted by Plaintiff—which form the gravamen of the entire dispute—are common law contract or tort claims that are legal in nature and do not fall under any statute vesting the Court with jurisdiction.[30] However, under the clean-up doctrine, "[t]he Court of Chancery [ ] can obtain subject matter jurisdiction over purely legal claims."[31] The clean-up doctrine "provides the Court of Chancery with jurisdiction to resolve purely legal causes of action that are before it as part of the same controversy over which the Court originally had subject matter

---

[29] *See McMahon v. New Castle Assocs.*, 532 A.2d 601, 605 (Del. Ch. 1987).
[30] *See, e.g., Helix Generation LLC v. Transcanada Facility USA*, 2019 WL 2068659, at *2 (Del. Ch. May 10, 2019) (holding that claims for breach of contract and tort are legal claims).
[31] *Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 974 (Del. Ch. 2016).

jurisdiction in order to avoid piecemeal litigation."[32]  The purpose of the clean-up doctrine is "to resolve a factual issue which must be determined in the proceedings; to avoid multiplicity of suits; to promote judicial efficiency; to do full justice; to avoid great expense; to afford complete relief in one action; and to overcome insufficient modes of procedure at law."[33]

Plaintiff's remaining claims, *i.e.*, fraud, breach of contract, duress, and lack of consideration, are common law contract or tort claims that are legal in nature, and all damages sought run from the contractual obligations underlying the parties' relationship.  While this Court may exercise the clean-up doctrine, that right is discretionary.  In this case, in light of my finding that the equitable claims were not well-pled, I did not have jurisdiction *ab initio*; my involvement in the case is limited and attenuated; and the matter is pending pleading-stage motion practice.  In short, there are no efficiency concerns sufficient to invoke the cleanup doctrine.

### III.   Conclusion

Plaintiff has failed to state a cognizable claim for breach of fiduciary duty or equitable accounting.  This matter sounds fundamentally in contract, and secondarily in legal torts; this Court lacks subject-matter jurisdiction because an adequate remedy at law exists.  Therefore, this matter is DISMISSED with leave to refile in

---

[32] *Id.*

[33] *Getty Refin. & Mktg. Co. v. Park Oil, Inc.*, 385 A.2d 147, 150 (Del. Ch. 1978) (footnote omitted).

9

Superior Court.[34]  To the extent the foregoing requires an Order to take effect, IT IS

SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*
Vice Chancellor

---

[34] 10 *Del. C.* § 1902.

10