# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JEEHYE JUNG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2021-0798-MTZ |
| | ) | |
| EL TINIEBLO INTERNATIONAL, | ) | |
| INC., TAMA IMPORTS, LLC, | ) | |
| EDGAR D. MCKEAN, III, AND | ) | |
| ALFREDO PEREZ-SALINAS | ) | |
| TIJERINA, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: July 15, 2022
Date Decided: October 31, 2022

Gregory F. Birney, BIRNEY LAW, LLC, Claymont, Delaware; Matt Simmons, LAW OFFICES OF MATT SIMMONS, ESQ., Rockville, Maryland, *Attorneys for Plaintiff Jeehye Jung.*

Robert K. Beste, SMITH, KATZENSTEIN & JENKINS LLP, Wilmington, Delaware; Kimberly E. Blair and Deanna M. Williams, WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP, Chicago, Illinois, *Attorneys for Defendants El Tinieblo International, Inc., TAMA Imports, LLC, Edgar D. McKean, III, and Alfredo Perez-Salinas Tijerina.*

**ZURN, Vice Chancellor.**

In December 2017, the plaintiff in this action contracted to provide marketing services to a New Hampshire limited liability company operating in the mezcal market. In exchange, the plaintiff received an approximately 2% interest in the LLC and earned thousands of dollars in monthly pay and commissions. The LLC terminated the contract within six months. The plaintiff and two LLC members discussed buying the plaintiff out, but no money changed hands.

In April 2019, another entity formed by two members of the LLC purported to acquire 100% of the LLC's outstanding interests. The plaintiff alleges she still owned approximately 2% of the LLC, but received no consideration. She contends the acquisition was part of a conspiracy to repossess her stake in the LLC without compensation.

The plaintiff sued two of the former LLC members, the LLC, and the acquirer, seeking a declaration that she is still an LLC member or that she is entitled to compensation for her interest. The plaintiff also asserts breach of fiduciary duty claims for causing the purported transfer of her interest and breach of contract claims for the amounts owed under her contract with the LLC.

The defendants moved to dismiss, primarily arguing that this Court lacks subject matter jurisdiction because two provisions in the New Hampshire LLC Act confer exclusive jurisdiction on New Hampshire for LLC internal affairs

1

claims "[u]nless the operating agreement provides otherwise."[1]  That argument fails under the Full Faith and Credit Clause of the United States Constitution.  To the extent the New Hampshire statutes purport to divest this Court of jurisdiction, the plaintiff's claims are not the sort of claims for which a state can seize exclusive jurisdiction.

The LLC also moved to dismiss the breach of contract count for lack of personal jurisdiction.  Because the LLC has effectively consented to personal jurisdiction as to other sufficiently related claims, the Court may and will exercise personal jurisdiction over the LLC for the breach of contract claim as well.

Finally, the defendants challenged the merits of most of the plaintiff's claims.  They have limited success.

## I.     BACKGROUND[2]

Defendant TAMA Imports, LLC ("TAMA") is a New Hampshire limited liability company that operates a mezcal business in the United States. TAMA was founded by defendants Edgar McKean and Alfredo Perez-Salinas Tijerina,

---

[1] N.H. Rev. Stat. 304-C:186.

[2] The facts are drawn from well-pled allegations in the Verified Complaint (the "Complaint"), available at Docket Item ("D.I.") 1, as well as the documents incorporated therein by reference and those that are integral to the Complaint. *See Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004).

and nonparty Matthew McKean, in September 2016. Initially, Edgar held 25% of TAMA's units, Tijerina owned 70%, and Matthew owned 5%.[3]

In December 2017, Plaintiff Jeehye Jung and TAMA executed a services agreement (the "Services Agreement") by which Jung would assume the role of TAMA's Chief Marketing Officer and "provide input and expertise for digital strategy and commercialization."[4] TAMA agreed to pay Jung $3,000 each month plus commissions on certain sales. TAMA would also provide Jung "an interest in [TAMA] at the rate of 0.416/unit, per month, up to 5% total equity."[5] Jung was not given a copy of TAMA's operating agreement when she entered into the Services Agreement.

On April 13, 2018, TAMA notified Jung it was terminating the Services Agreement. By then, Jung had accrued a 2.08% interest in TAMA, and TAMA owed her $6,596 under the Services Agreement.

On April 15, TAMA's general counsel emailed Jung, acknowledging her 2.08% interest, and stating that "TAMA's shares are currently valued at $1,000.00 per unit," her units were collectively worth "approximately $2,080.00," and "[t]he

---

[3] In pursuit of clarity, I refer to Edgar McKean and Matthew McKean by their first names. I intend no familiarity or disrespect.

[4] Docket Item ("D.I.") 1 [hereinafter "Compl."] at Ex. B § 1.

[5] *Id.* § 4.

value of the Company itself is well in the negative as of today."[6]  This per unit valuation is consistent with TAMA's Limited Liability Company Agreement (the "Operating Agreement"), which states that each TAMA unit is valued at $1,000.[7]

Later that month, Jung met with Edgar and Matthew to discuss the acquisition of her interest in TAMA and payment of amounts owed to her under the Services Agreement.  They discussed the possibility of Jung accepting a payment of $8,080 for both her equity and amounts owed.  They did not agree on a date the payment would be made, and they did not sign any written agreements at the time.  To date, no payments have been made pursuant to that conversation.

In 2019, defendant El Tinieblo International, Inc. ("ETI"), a Delaware corporation Tijerina and Edgar had formed in 2018, purportedly acquired all of TAMA's outstanding units, including Jung's interest.  On April 13, 2019, ETI filed an offering memorandum with the SEC, which announced that ETI "purchased 100% interest [sic] in TAMA Imports, LLC April 3, 2019 [sic] using company stock."[8]  According to the filing, the only outstanding company shares consisted of Class A Preferred Stock, of which Tijerina and Edgar collectively owned 95% at the time of the offering.  The filing describes that Tijerina, Edgar,

---

[6] Compl. at Ex. D.

[7] D.I. 36 [hereinafter "TAMA Operating Agreement"] at Ex. A.

[8] Compl. at Ex. A, at JJ000022 [hereinafter "ETI Offering Mem."].

4

and Matthew "contributed 100% of their membership interest in TAMA . . . in exchange for a total of 675,000 shares of stock," and that TAMA became a wholly-owned ETI subsidiary.[9]  Jung has not received any compensation for her TAMA units.

Jung filed her Complaint on September 15, 2021, asserting various claims against Tijerina, Edgar, ETI, and TAMA (collectively, "Defendants").  Count I, against all Defendants, seeks a declaratory judgment that she "is the rightful owner of 2.08% of TAMA" or that she is entitled to compensation for the deprivation of her interest.[10]  In Count II, Jung asserts Tijerina, Edgar, and TAMA breached their fiduciary duties of care and loyalty owed to her as a TAMA member.  Count III alleges ETI aided and abetted those breaches by paying Tijerina, Edgar, and Matthew 100% of the proceeds from its acquisition of TAMA despite knowing Tijerina, Edgar, and TAMA were breaching their fiduciary duties in entering into that acquisition.  Count IV claims ETI was unjustly enriched because it "purchased 100% of TAMA but paid 2.08% of the consideration to the wrong persons," and nevertheless accepted the benefit of that transaction.[11]  Count V is a conspiracy claim against all Defendants, alleging they "conspired to unlawfully

---

[9] *Id.* at JJ000004, JJ000022.

[10] Compl. ¶ 28.

[11] *Id.* ¶ 40.

5

cut [Jung] out of TAMA and to steal from the value of her interest in it."[12]

Count VI asserts a breach of contract claim against TAMA for failure to pay Jung under the Services Agreement.

On December 6, 2021, Defendants moved to dismiss the Complaint (the "Motion").[13]  Defendants primarily argue the Court lacks subject matter jurisdiction over all but one of Jung's claims, because the New Hampshire LLC Act (the "NH Act") mandates those claims be brought in New Hampshire.  As to the remaining breach of contract claim, Defendants argue Delaware courts lack personal jurisdiction over TAMA.  Defendants contend Tijerina and TAMA did not owe Jung fiduciary duties under New Hampshire law.  Finally, Defendants assert Jung has failed to state claims for aiding and abetting and conspiracy.

The parties briefed the Motion, and I heard oral argument on June 2, 2022.[14] I asked Defendants to file the Operating Agreement, which they did on June 3.[15] I also asked for supplemental briefing characterizing Jung's claims for purposes

---

[12] *Id.* ¶ 42.

[13] In the same motion, Defendants moved to enforce a purported oral agreement that Jung and TAMA, through Edgar and Matthew, purportedly reached in 2018.  On Defendants' suggestion, that request for relief was stayed pending resolution of the motion to dismiss.  D.I. 38 at 4–5, 56–57.

[14] D.I. 37; D.I. 38.

[15] D.I. 38 at 17; TAMA Operating Agreement.

of the NH Act's venue statute and addressing the Operating Agreement.[16] The parties submitted that briefing on July 15.[17]

## II.    ANALYSIS

Defendants argue the Complaint should be dismissed under Court of Chancery Rules 12(b)(1), (2), and (6).[18] I must first determine whether the Court has subject matter jurisdiction over each claim before considering whether personal jurisdiction exists.[19] After addressing subject matter jurisdiction and personal jurisdiction, I will determine whether the Complaint adequately pleads each claim Defendants moved to dismiss under Rule 12(b)(6).[20]

---

[16] D.I. 38 at 58.

[17] D.I. 41; D.I. 42.

[18] The Motion stated Defendants were also moving to dismiss on Court of Chancery Rules 12(b)(3), (4), and (5), but they have not briefed dismissal under those rules. Accordingly, any argument that the Complaint should be dismissed under those rules is deemed waived. *Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived.").

[19] *See Preston Hollow Cap., LLC v. Nuveen, LLC*, 2019 WL 3801471, at *4 (Del. Ch. Aug. 13, 2019) ("Equitable jurisdiction is a predicate issue for every matter in this court of limited jurisdiction.").

[20] *See Gibralt Cap. Corp. v. Smith*, 2001 WL 647837, at *5 (Del. Ch. May 9, 2001) (describing personal jurisdiction as a "threshold issue").

### A.   The Court Has Subject Matter Jurisdiction Over All Of Jung's Claims.

"The Court of Chancery is proudly a court of limited jurisdiction."[21]  "The Court of Chancery can exercise subject matter jurisdiction only when a case falls into one of three buckets."[22]  Those buckets contain cases in which (i) "a plaintiff states an equitable claim," (ii) "a plaintiff requests equitable relief and there is no adequate remedy at law," and (iii) "jurisdiction exists by statute."[23]  Jung seeks to invoke this Court's subject matter jurisdiction under the first bucket through her breach of fiduciary duty claim, and contends the Court should exercise its equitable cleanup jurisdiction over the remaining claims.[24]

Defendants contend two provisions of the NH Act preclude this Court from exercising subject matter jurisdiction over claims concerning the internal affairs of New Hampshire LLCs.  Defendants' opening brief described those provisions as "mandatory statutory provision[s]" that require this litigation to be brought in

---

[21] *Perlman v. Vox Media, Inc.*, 2019 WL 2647520, at *4 (Del. Ch. June 27, 2019), *aff'd*, 249 A.3d 375 (Del. 2021).

[22] *Delawareans for Educ. Opportunity*, 2018 WL 4849935, at *5 (Del. Ch. Oct. 5, 2018); *see also Candlewood Timber Grp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004) (identifying the three ways the "Court of Chancery can acquire subject matter jurisdiction").

[23] *Delawareans for Educ. Opportunity*, 2018 WL 4849935, at *5.

[24] Jung also asserts this Court has subject matter jurisdiction via 10 *Del. C.* § 341, but that statute confers jurisdiction only as to Delaware LLCs.

New Hampshire.[25]  Jung argues that a state may not seize exclusive jurisdiction over claims that are doctrinally described as transitory, rather than local.  She also argues that internal affairs and contract claims like hers are transitory.  I agree with Jung.  I also conclude one of the NH Act provisions is inapplicable as to the claims against TAMA, and the other is inapplicable to the question of subject matter jurisdiction in this case.

The sections at issue are New Hampshire Revised Statutes Annotated Sections 304-C:59 ("Section 59") and 304-C:186 ("Section 186").  They read as follows:

> Section 59:  Any dispute as to whether a person was or is or will be entitled to become a member of a limited liability company and as to when the person was admitted or will be entitled to be admitted as a member shall be resolved in a proceeding in the superior court.[26]

> Section 186:  Unless the operating agreement provides otherwise, disputes between the members and disputes between the members and the managers relating to the limited liability company shall be resolved by litigation in the courts of the state of New Hampshire.[27]

As best I can tell, no New Hampshire court has yet interpreted the scope of these statutes, so I must predict how a New Hampshire court would construe

---

[25] D.I. 24 at 9–10.

[26] N.H. Rev. Stat. Ann. § 304-C:59.

[27] *Id.* § 304-C:186.

them.[28]  I will do my best to do so under the principles of statutory interpretation New Hampshire courts use.

New Hampshire courts interpret statutes to determine the "legislature's intent as expressed in the words of the statute considered as a whole," with the goal of effectuating the underlying policy.[29]  The NH Act's stated policy is "to give the maximum effect to the principle of freedom of contract and to the enforceability of operating agreements."[30]  New Hampshire courts look to the "plain and ordinary meanings of the words used."[31]  Statutes should be interpreted "to give meaning to every word and phrase."[32]  Where a statute's plain text is unambiguous, a court should not consider its legislative history.[33]  Though statutes should be read in a manner that renders them constitutional, a court may not ignore a statute's plain unambiguous language in doing so.[34]

---

[28] *See Berger v. Intelident Sols., Inc.*, 911 A.2d 1164, 1169 (Del. Ch. 2006) ("But given the complete absence of Florida case law interpreting section 607.1302(4), this court must predict how a Florida tribunal would construe that provision.").

[29] *In re A.D.*, 214 A.3d 1213, 1216 (N.H. 2019).

[30] N.H. Rev. Stat. Ann. § 304-C:2.

[31] *O'Brien v. N.H. Democratic Party*, 89 A.3d 1202, 1205 (N.H. 2014).

[32] *In re A.D.*, 214 A.3d at 1216 (internal quotation marks omitted) (quoting *O'Brien*, 89 A.2d at 1204).

[33] *DeBenedetto v. CLD Consulting Engineers, Inc.*, 903 A.2d 969, 976 (N.H. 2006) ("When a statute's language is plain and unambiguous, we need not look beyond it for further indication of legislative intent, and we will not consider what the legislature might have said or add language that the legislature did not see fit to include.").

[34] *Polonsky v. Town of Bedford*, 190 A.3d 400, 406 (N.H. 2018); *id.* ("A preference for giving statutes a constitutional meaning is a reason to construe, not to rewrite or

### 1. Section 186 Cannot Confer On New Hampshire Courts Exclusive Jurisdiction Over Jung's Claims.

I begin with Section 186's broad directive that "disputes between the members and disputes between the members and the managers" relating to their New Hampshire LLC "shall be resolved by litigation" in New Hampshire courts.[35] Defendants wield this statute against all of Jung's claims.

As an initial matter, the plain text of Section 186 makes clear that it does not apply to Jung's claims against TAMA: Section 186 references only disputes among members and managers, not with the LLC itself. Taking as true Jung's assertion that she was a member of TAMA, I will assume that her claims against ETI as a TAMA member, and her claims against Tijerina and Edgar for actions taken in their former capacities as TAMA members, fall within Section 186. TAMA's Operating Agreement did not opt out of New Hampshire's jurisdiction.[36] I must now resolve whether Section 186 may be enforced as to those claims.

### a. The Full Faith And Credit Clause Prohibits This Court From Enforcing Section 186.

Section 186 provides that, in the absence of contrary provisions in the operating agreement, certain disputes "shall be resolved by litigation in the courts

---

'improve.'" (internal quotation marks omitted) (quoting *United States v. Marshall*, 908 F.2d 1312, 1318 (7th Cir. 1990)).

[35] N.H. Rev. Stat. Ann. § 304-C:186.

[36] *See* TAMA Operating Agreement.

of the state of New Hampshire."[37]  Under New Hampshire law, "shall" denotes a mandatory provision.[38]  If a claim between members of a New Hampshire LLC is brought in a different state, this mandatory provision purports to divest that state of jurisdiction.

Jung has turned to our republic's founding document to assert Section 186 cannot deprive this Court of subject matter jurisdiction over her breach of fiduciary duty claims.  Article IV, Section 1 of the United States Constitution, referred to as the Full Faith and Credit Clause, requires that a state enforce the laws of its sister states.[39]  It also prohibits states from refusing to hear claims arising under the laws of other states.[40]  The Full Faith and Credit Clause does not

---

[37] N.H. Rev. Stat. Ann. § 304-C:186.

[38] *In re Bazemore*, 899 A.2d 225, 228 (N.H. 2006) ("It is a general rule of statutory construction that . . . the word 'shall' makes enforcement of a provision mandatory.").

[39] *See* US. Const. art. IV, § 1; *Tenn. Coal, Iron & R. Co. v. George*, 233 U.S. 354, 360 (1914).

[40] *See Hughes v. Fetter*, 341 U.S. 609, 613 (1951); *Broderick v. Rosner*, 294 U.S. 629, 642 (1935) ("[A state] may not, under the guise of merely affecting the remedy, deny the enforcement of claims otherwise within the protection of the full faith and credit clause, when its courts have general jurisdiction of the subject-matter and the parties."); *see also IMO Daniel Kloiber Dynasty Tr.*, 98 A.3d 924, 940 (Del. Ch. Aug. 6, 2014) ("[T]he United States Supreme Court has interpreted the Full Faith & Credit Clause as requiring that state courts not only respect the laws of their sister states but also entertain claims under their laws.").

require—or permit—states to enforce laws that purport to confer exclusive jurisdiction upon a different state to hear certain claims.[41]

As made clear by the United States Supreme Court in *Tennessee Coal v. George*,[42] statutory venue provisions that limit claims to being heard in only one state are generally not enforceable.[43]  There, the Supreme Court held that while states are obliged to recognize claims arising under the laws of other states, they are not required to enforce a statutory venue provision:

> The courts of the sister state, trying the case, would be bound to give full faith and credit to all those substantial provisions of the statute which inhered in the cause of action, or which name conditions on which the right to sue depend.  But venue is no part of the right; and a state cannot create a transitory cause of action and at the same time destroy the right to sue on that transitory cause of action in any court having jurisdiction.[44]

As this Court has explained, "[t]he fifty states in our federal republic are peers," and a state may "not mak[e] a claim against the world that no court outside of [that

---

[41] *See Tenn. Coal*, 233 U.S. at 360; *Kloiber*, 98 A.3d at 939  ("Nor, as a matter of power within our federal republic, could the State of Delaware arrogate [exclusive jurisdiction] to itself."); Restatement (Second) of Conflict of Laws § 91 (1971) ("A State may entertain an action even though the state of the applicable law has provided that action on the particular claim shall not be brought outside its territory."); *Hughes*, 341 U.S. at 613 ("[W]e conclude that Wisconsin's statutory policy which excludes this Illinois cause of action is forbidden by the national policy of the Full Faith and Credit Clause.").

[42] 233 U.S. 354 (1914).

[43] *See id.* at 360.

[44] *Id.*

state] can exercise jurisdiction over that type of case."[45] "If [a state] sought to preclude a sister state from hearing a matter of [the first state's] law, it would not be giving constitutional respect to the judicial proceedings of the sister state."[46] And a court may not refuse to hear a cause of action arising under the laws of another state.[47]

As relevant here, the Full Faith and Credit Clause contains a requirement and an exception to that requirement. The Full Faith and Credit Clause requires that states enforce the laws of other states. For example, a plaintiff may file suit in Delaware asserting claims that arise under New Hampshire statutes. The Delaware court cannot decline to hear those claims on the grounds that they arose under New Hampshire's laws. It must enforce New Hampshire's laws. But there is an exception, further in aid of the goal that every state's laws be enforceable in every other state: a state may not enforce another state's venue statute. To continue the example, while the Delaware court must enforce New Hampshire's laws, it may not enforce a New Hampshire law that prohibits the Delaware court from enforcing the rest of New Hampshire's laws. A state must entertain a claim arising under another state's laws notwithstanding the presence of a venue statute.

---

[45] *Kloiber*, 98 A.3d at 939.

[46] *Id.* (collecting authorities).

[47] *Supra* note 40.

Section 186 is a mandatory statutory venue provision. This Court cannot enforce Section 186. Section 186's language allowing New Hampshire LLCs to opt out of this provision does not compel a different result. TAMA did not opt out, and Defendants now ask this Court to enforce Section 186 as a mandatory venue statute. United States Supreme Court precedent precludes me from doing so.[48]

### b. Jung's Claims Are Not Local To New Hampshire.

Defendants assert that Section 186 can properly mandate that Jung's claims be heard in New Hampshire because the claims are local to New Hampshire. Local claims, i.e. claims in rem or otherwise focused on real property, may be brought in only the jurisdiction in which the property at issue is located.[49]

---

[48] *Supra* note 41.

[49] *See Ellenwood v. Marietta Chair Co.*, 158 U.S. 105, 107 (1895) ("By the law of England, and of those states of the Union whose jurisprudence is based upon the common law, an action for trespass upon land, like an action to recover the title or the possession of the land itself, is a local action, and can only be brought within the state in which the land lies."); *The L'Invincible*, 14 U.S. 238, 242 (1816) ("An injury of this nature is either to be redressed by a process *in rem* or *in personam*, and in either case, application must be made where the thing, or person, is found."); *Hayes v. Gulf Oil Corp.*, 821 F.2d 285, 287 (5th Cir. 1987) ("A local action involving real property can only be brought within the territorial boundaries of the state where the land is located."); *French v. Clinchfield Coal Co.*, 407 F. Supp. 13, 15 (D. Del. 1976) ("'[L]ocal' actions may be tried only in the District in which the property is found."); 14D Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3822 (4th ed.) [hereinafter "Wright & Miller"] ("Under the [local action] doctrine, local actions could be brought only where the property involved in the litigation was located."); *see also In re Sch. Asbestos Litig.*, 921 F.2d 1310, 1319 (3d Cir. 1990) ("The law distinguishes between transitory and local actions. Local actions are essentially *in rem* and may only be prosecuted 'where the thing on which they are founded is situated.'" (quoting 15 Charles

15

Additionally, a state may localize a claim by statute.[50]  If Jung's claims are local in nature, or if the NH Act localizes Jung's claims, this Court must dismiss Jung's claims for lack of subject matter jurisdiction.[51]  For the reasons that follow, I find that Jung's claims are not local and have not been localized, and so the prohibition on a state statutory venue provision for transitory claims precludes this Court's enforcement of Section 186.

---

A. Wright, Arthur R. Miller, *Federal Practice and Procedure: Jurisdiction* § 3822, at 204–05 (2d ed. 1986)).

[50] *See Taylor v. LSI Logic Corp.*, 715 A.2d 837, 839–41 (Del. 1998) (concluding a Canadian statute provided that an exclusive equitable remedy was available only in the courts of Canada, and so a claim tied that remedy must be heard in Canada), *overruled on other grounds by Martinez v. E.I. DuPont de Nemours & Co.*, 86 A.3d 1102, 1107 (Del. 2014).

[51] *See id.*

State law claims are either local or transitory.[52] Local claims include in rem actions and those that "involve specific types of claims concerning real property."[53] Local claims generally involve claims for title to property, injunctive relief to stop injury to property, "or an action for trespass . . . or waste."[54] All in rem actions are local,[55] but not all local actions are in rem.[56]

The term "transitory claim" has eluded clear definition.[57] Often, "transitory" is defined by negation; transitory claims are claims that are not

---

[52] *See* Wright & Miller § 3822 ("Transitory actions consist of all cases that are not local actions. In other words, for purposes of venue, every civil action is either local or transitory. If a case is not local, it is transitory.").

    At English common law, all actions were local. *See Livingston v. Jefferson*, 239 Fed. Cas. 660, 663 (C.C.D. Va. 1811). In 1811, Chief Justice John Marshall incorporated the "local doctrine" into American law while riding as a circuit judge, in *Livingston v. Jefferson. See id.*; *Bigio v. Coca-Cola Co.*, 239 F.3d 440, 450 (2d Cir. 2000). Two hundred years later, Congress "abolished the local doctrine in federal court" through the Federal Courts Jurisdiction and Venue Clarification Act of 2011. Wright & Miller § 3822; 28 U.S.C. § 1391(a)(2) ("[T]he proper venue for a civil action shall be determined without regard to whether the action is local or transitory in nature.").

[53] Wright & Miller § 3822; 17 James Moore et al., *Moore's Federal Practice* § 110.20 (3d ed. 2004) [hereinafter "*Moore's Federal Practice*"]; *Casey v. Adams*, 102 U.S. 66, 68 (1880) ("Local actions are in the nature of suits *in rem*, and are to be prosecuted where the thing on which they are founded is situated."). *But see Livingston*, 15 F. Cas. at 664 (reasoning local actions should not be defined as in rem actions).

[54] *French*, 407 F. Supp. at 16; *Ex parte Teledyne Expl.*, 436 So. 2d 880, 881 (Ala. 1983); Wright & Miller § 3822 ("Among various actions that have been held to be local for federal venue purposes are those to set aside a preferential transfer of property, to foreclose or cancel a mortgage, for trespass to land, to abate a nuisance, to try title to land, as well as others collected in the margin." (footnotes omitted)); *see also Sheppard v. Coeur d'Alene Lumber Co.*, 112 P. 932, 936 (Wash. 1911) ("Under all authority, the action of trespass is held to be local, and the damage following the trespass is of the same class."). Delaware does not consider trespass actions as local. *See Candlewood*, 859 A.2d at 1005 (citing with approval Restatement (Second) Conflict of Laws

17

§ 87 (1971)); Restatement (Second) Conflict of Laws § 87 (1971) ("A State may entertain an action that seeks to recover compensation for a trespass upon or harm done to land in another state.").

[55] *See Casey*, 102 U.S. at 68 ("Local actions are in the nature of suits in rem . . . ."); *Thormann v. Frame*, 176 U.S. 350, 355 (1900) ("[A] judgment in rem binds only the property within the control of the court which rendered it; and a judgment *in personam* binds only the parties to that judgment and those in privity with them. The appointment cannot be treated as a judgment *in personam*, and as a judgment *in rem* it merely determines the right to administer the property within the jurisdiction, whether considered as directly operating on the particular things seized, or the general status of assets there situated."); *Nelson v. Miller*, 201 F.2d 277, 280 (9th Cir. 1952) ("Each state court can stand upon its findings as to domicile and apply its probate laws to the estate property situate within it. Having no jurisdiction over property outside its borders, its orders as to such property imposed no duty upon another state to recognize them on the doctrine of full faith and credit."); *Am. Druggists' Ins. Co. v. Carlson*, 1989 WL 513218, at \*3 (W.D. Mich. May 1, 1989) ("It is well-established that a judgment in rem binds only the property within the control of the court which rendered it."); *Copeland v. Wiley*, 1976 WL 8263, at \*1 (Del. Ch. Feb. 25, 1976) ("[I]t is generally recognized that a court cannot issue decrees directly affecting extraterritorial real estate . . . ."); 21 C.J.S. *Courts* § 40 (2022) ("[A] court of one state has no power of in rem jurisdiction to directly affect title to land located wholly within the borders of another."); *see also Thormann*, 176 U.S. at 356 ("[I]t is thoroughly settled that the constitutional provision that full faith and credit shall be given in each state to the judicial proceedings of other states, does not preclude inquiry into the jurisdiction of the court in which the judgment is rendered, over the subject-matter, or the parties affected by it, or into the facts necessary to give such jurisdiction.").

[56] *See French*, 407 F. Supp. at 15 (stating that local actions include claims for injunctive relief and waste, among others).

[57] Brainerd Currie, *The Constitution and the "Transitory" Cause of Action*, 73 HARV. L. REV. 36, 66 (1959) ("It is not easy to find a satisfactory definition of a transitory action.").

local.[58]  All other claims, including those claiming injuries in contract and tort, or concerning personal property, are transitory.[59]  Put another way, in personam actions are transitory,[60] and a claim seeking a personal judgment will be transitory even if the action concerns real property.[61]

---

[58] Wright & Miller § 3822 ("Transitory actions consist of all cases that are not local actions. . . .  If a case is not local, it is transitory.").  Transitory claims are also defined as those that "could have arisen anywhere." *See Minichiello Realty Assocs., Inc. v. Britt*, 460 F. Supp. 896, 898 (D.N.J. 1978) ("The traditional test, even though not entirely perfect, is whether the specific cause of action could have arisen elsewhere than where it did.  If it could not, the action is local; if it could, it is transitory."); *see also Candlewood*, 859 A.2d at 1006 ("By definition a transitory claim is one that can be brought in the jurisdiction where a defendant resides . . . .").

[59] *AlixPartners, LLP v. Mori*, 2019 WL 6327325, at *8 (Del. Ch. Nov. 26, 2019) ("As *Candlewood* explains, '[n]o contemporary legal order's law of contract or tort seeks to localize . . . actions sounding in tort or contract.'" (alterations in original) (quoting *Candlewood*, 859 A.2d at 1007)); *McGonigle v. Atchison*, 7 P. 550, 552 (Kan. 1885) ("[A]ctions for injuries to persons or to personal property, or relating thereto, are generally transitory, and may be brought in any county where the wrong–doer may be found."); *Mason v. Warner*, 31 Mo. 508, 511 (1862) ("Actions for injuries to persons or personal property have been held to be transitory by the law of England for more than two hundred years.").

[60] *See Raphael J. Musicus, Inc. v. Safeway Stores, Inc.*, 743 F.2d 503, 506–07 (7th Cir. 1984) ("[T]o provide in personam relief, the court need only have personal jurisdiction over the defendant, and thus a transitory action may be brought in any jurisdiction in which the defendant can be found."); *Moore's Federal Practice* §110.20 ("Generally, local actions were those that directly affected real property; the traditional distinction therefore was the same as the traditional division between in personam and in rem jurisdiction.").

[61] *Raphael J. Musicus, Inc.*, 743 F.2d at 507 (reasoning an action affecting real property can be transitory "so long as the action is based in fraud, trust or contract"); *Potomac Milling & Ice Co. v. Baltimore & O.R. Co.*, 217 F. 665, 667 (D. Md. 1914) (reasoning an action was transitory where both real property and personal property were damaged).

Jung's claims are transitory.[62]  Her breach of fiduciary duty claims sound in tort and seek judgment against individual defendants.[63]  Her breach of contract claim is likewise transitory.[64]  Declaratory judgment claims not affecting the title to real property are transitory because the Court need not exercise control over the property at issue.[65]  Jung's claims are transitory unless they have been localized by New Hampshire law.[66]

---

[62] In furtherance of her argument that this Court has personal jurisdiction over TAMA, Jung stated that her claims are in rem.  Specifically, she argued that "Tama equity is a *res* the ownership of which Plaintiff seeks to establish."  D.I. 29 at 11.  This statement does not defeat her subject matter jurisdiction argument that her claims are transitory.  In determining whether an action is in rem or quasi in rem, the Court looks to "the 'practical effect of the relief' sought" and whether that relief requires the Court "to assert control over property." *In re Doehler Dry Ingredient Sols., LLC*, 2022 WL 4281841, at *4 (Del. Ch. Sept. 15, 2022) (quoting *Dyno v. Dyno*, 2021 WL 3508252, at *3 (3d Cir. Aug. 10, 2021)).  Jung seeks a declaratory judgment, namely an acknowledgement that she never relinquished her stock, or damages in the form of monetary compensation or ETI stock.  (If Jung never relinquished her interest in TAMA, then she still holds that interest and there would be no need to compel the return of that interest.)  Neither claim, and neither remedy, requires the Court to exercise control over TAMA or its equity.  Thus, Jung's claims are in personam.

[63] *See In re Rural Metro Corp.*, 88 A.3d 54, 98 (Del. Ch. 2014), ("A breach of fiduciary duty is an equitable tort."); *Sloan v. Segal*, 2008 WL 81513, at *9 (Del. Ch. Jan. 3, 2008) (reasoning a breach of fiduciary duty could be viewed "as having committed actions in the nature of a tort"); J. Travis Laster & Michelle D. Morris, *Breaches of Fiduciary Duty and the Delaware Uniform Contribution Act*, 11 DEL. L. REV. 71 (2010).

[64] *See AlixPartners*, 2019 WL 6327325, at *8.

[65] *See In re Doehler Dry Ingredient*, 2022 WL 4281841, at *4; *Raphael J. Musicus, Inc.*, 743 F.2d at 508 ("The determinative element in defining a transitory action is whether the type of relief requested is of a 'personal' nature so that the court, in acting upon the person or personal property of the defendant which is within its control, need not act directly upon the lands involved."); *see also supra* note 55.

[66] *See Candlewood,* 859 A.2d 1007.

A statutory scheme will localize an otherwise transitory claim where (i) the cause of action is created by a statute, (ii) "the provision for the liability is coupled with a provision for the special remedy," and (iii) "that remedy . . . alone, must be employed."[67] That is, providing a statutory remedy is not enough to localize the claim: "a state cannot create a transitory cause of action and at the same time destroy the right to sue on that transitory cause of action in any court having jurisdiction."[68] Rather, that remedy must be "inseparably intertwined" such that "relief under the statute could only be obtained from one of the" jurisdiction's tribunals.[69] If the claim has been localized, the state that created the claim will have exclusive jurisdiction.[70] Delaware courts apply the *Tennessee Coal* test to determine if a claim is localized, asking whether the statutory right and remedy are so closely related that the plaintiff's claims must be brought in the jurisdiction which created the statutory right.[71]

---

[67] *Tenn. Coal*, 233 U.S. at 359 (internal quotation marks omitted) (quoting *Pollard v. Bailey*, 87 U.S. (20 Wall.) 520, 527 (1874)).

[68] *Id.* at 360.

[69] *Candlewood*, 859 A.2d at 1007; *see also Tenn. Coal*, 233 U.S. at 359 ("[T]he right and the remedy are not so inseparably united as to make the right dependent upon its being enforced in a particular tribunal."); *Pollard*, 87 U.S. at 527 ("A general liability created by statute without a remedy may be enforced by an appropriate common-law action. But where the provision for the liability is coupled with a provision for a special remedy, that remedy, and that alone, must be employed.").

[70] *See Tenn. Coal*, 233 U.S. at 359.

[71] *AlixPartners*, 2019 WL 6327325, at *5–8; *Candlewood*, 859 A.2d at 1006–07; *Taylor*, 715 A.2d 837; *see also Tenn. Coal*, 233 U.S. at 360.

21

Jung's request for a declaratory judgment arises under a New Hampshire statute.[72] For purposes of this opinion, I assume, without deciding, that her breach of fiduciary duty claim arises under New Hampshire statute.[73] The NH Act does not prescribe a remedy, much less one that is so intertwined with the right that only a New Hampshire court could award it. *Tennessee Coal* compels the conclusion that New Hampshire law has not localized Jung's declaratory judgment and breach of fiduciary duty claims. The remaining claims arise under common law, and the NH Act provides no remedy for them. I conclude that the NH Act did not localize any of Jung's claims.

United States Supreme Court precedent precludes the enforcement of a statutory venue provision. Having concluded Jung's claims are transitory and have not been localized by statute, I must also conclude this Court cannot enforce Section 186 and commit those claims solely to New Hampshire's subject matter jurisdiction.

---

[72] *See* N.H. Rev. Stat. Ann. § 491:22; *see also El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 493 (1st Cir. 1992) (describing declaratory judgment actions as "statutory creatures").

[73] New Hampshire Revised Statutes Annotated § 304-C:108 provides that managers—and members in some instances—owe a duty of care. N.H. Rev. Stat. Ann. § 304-C:108. New Hampshire Revised Statutes Annotated § 304-C:110 provides that the same persons owe a duty of loyalty and specifies what that duty of loyalty includes. *Id.* § 304-C:110. For purposes of this opinion, I need not decide whether these statutes represent a codification of the common law, and whether such a codification would mean that New Hampshire has "created" such claims for purposes of *Tennessee Coal* and its progeny.

22

### c. Defendants Waived Their Contractual Forum Selection Arguments.

While Defendants' opening brief wields Section 186 as a statutory venue provision, their reply brief argues Section 186 created a contractual forum selection clause enforceable as part of TAMA's Operating Agreement. Defendants waived this contractual argument by failing to raise it in their opening brief.

Whether a party waived an argument is a matter of discretion.[74] Generally, the failure to raise an argument in one's opening brief constitutes a waiver of that argument.[75] Waiver is fundamentally an issue of fairness: the belated presentation of an argument can deprive the opposing party of notice and the opportunity to

---

[74] *REJV5 AWH Orlando, LLC v. AWH Orlando Member, LLC*, 2018 WL 1109650, at *4 (Del. Ch. Feb. 28, 2018) ("The determination of whether *vel non* an argument is waived is highly contextual and ultimately a matter within this Court's discretion . . . .").

[75] *Emerald P'rs*, 726 A.2d at 1224 ("Issues not briefed are deemed waived.").

23

respond.[76]  A party does not necessarily preserve an argument merely by presenting some related facts in their opening brief.[77]

Some arguments, including subject matter jurisdiction arguments, cannot be waived.[78]  That bar is not absolute.  A party may waive contractual provisions that would strip this Court of subject matter jurisdiction, such as a forum selection provision.[79]

[76] *PharmAthene, Inc. v. SIGA Techs., Inc.*, 2011 WL 6392906, at *2 (Del. Ch. Dec. 16, 2011) ("The general rule [is] that a party waives any argument it fails properly to raise shows deference to fundamental fairness and the common sense notion that, to defend a claim or oppose a defense, the adverse party deserves sufficient notice of the claim or defense in the first instance."); *Mack v. Rev Worldwide, Inc.*, 2020 WL 7774604, at *16 (Del. Ch. Dec. 30, 2020) ("This Court's briefing rules and practices mitigate the risk of unfair surprise from new or unreasonably expanded arguments.  It is well settled that arguments that were not raised in an opening brief and are beyond the scope of matter asserted in a responsive brief are deemed waived."); *Asbestos Workers Loc. 42 Pension Fund v. Bammann*, 2015 WL 2455469, at *20 (Del. Ch. May 21, 2015) (rejecting as waived an argument presented for the first time at oral argument).

[77] *Bammann*, 2015 WL 2455469, at *20 ("While the agency decisions were presented, at least partially, as background facts in the Plaintiff's briefing, the briefing did not contend that these agency decisions separated the issue before me from those decided in the New York Actions, precluding collateral estoppel, and the Defendants had no meaningful opportunity to respond to such an argument.  Accordingly, I find that any such argument was waived.").

[78] *Delawareans for Educ. Opportunity*, 2018 WL 4849935, at *11 ("Ordinarily, raising a new argument so tardily would result in waiver, but to the extent the argument would affect this court's subject matter jurisdiction, it would not be waivable.").

[79] *See Botman Int'l, B.V. v. Int'l Produce Imports, Inc.*, 205 F. App'x 937, 941 (3d Cir. 2006) ("[T]he applicability of a forum selection or choice-of-law clause is not a jurisdictional issue and a party may waive its right to enforce it."); *see also Falcon Steel Co. v. Weber Eng'g Co.*, 517 A.2d 281, 288 (Del. Ch. 1986) (reasoning a party may waive the right to compel arbitration through active participation in a lawsuit or taking action inconsistent with arbitration right); *Halpern Med. Servs., LLC v. Geary*, 2012 WL 691623, at *3 (Del. Ch. Feb. 17, 2012) (same).

In their opening brief, Defendants argued this Court lacks subject matter jurisdiction because the express language of Section 186 requires Jung's claims to be filed in New Hampshire.[80] In their reply, Defendants argued that Section 186 supplied a contractual provision to TAMA's Operating Agreement that compels Jung, as a TAMA member, to sue in New Hampshire.[81] These arguments differ substantively and materially, with the first drawing on the state's power to mandate a venue and the other drawing on the power of private parties to agree to a venue.[82] Defendants' opening statutory argument would not put Jung on notice

[80] D.I. 24 at 10 ("As in Delaware, under New Hampshire law, the word 'shall' denotes a mandatory statutory provision, and thus any 'disputes between the members and disputes between the members and managers,' such as the action before the Court, must be resolved in New Hampshire's Courts."); *id.* at 10–11 ("These allegations place the dispute squarely within the language of sections 59 and 186 of New Hampshire's limited liability company act, and New Hampshire law mandates that Jung proceed with her claims in New Hampshire."); *id.* at 18 ("As explained above, New Hampshire law requires that Jung bring her claims in a New Hampshire court. The statute is broad and mandates that any 'disputes between the members and disputes between the members and the managers relating to the limited liability company shall be resolved by litigation in the courts of the state of New Hampshire.'" (quoting N.H. Rev. Stat. 304-C:186)).

[81] D.I. 32 at 4 ("Thus, New Hampshire has not claimed, in N.H. Rev. Stat. 304-C:186, that its courts are the only courts which may resolve disputes between members and managers of New Hampshire limited liability companies, as Jung suggests. Instead, the statute simply provides for, and incorporates into all operating agreements governing New Hampshire limited liability companies, a default venue selection provision . . . ." (citation omitted)); *id.* at 5 ("Tama's operating agreement, by default and in conjunction with the statute, mandates Tama's members litigate in New Hampshire, and thus this Court lacks subject matter jurisdiction.").

[82] *See Kloiber*, 98 A.3d at 940 (contrasting a statutory arrogation of exclusive jurisdiction from "a situation where parties have agreed voluntarily by contract to an exclusive forum"). Some are pondering the extent to which an LLC agreement manifests state power. *See, e.g.*, *XRI Inv. Hldgs. LLC v. Holifield*, 2022 WL 4350311, at *61 n.84

that Defendants intended to raise the contractual argument. Presenting an argument in an opening brief does not entitle a party to argue a new and alternative argument in reply.

Defendants also waived their argument that the New Hampshire statute created a contractual forum selection provision by failing to offer any legal support or citation.[83] Rather, Defendants accuse Jung of not citing any contrary authority.[84] Presenting an argument in such cursory and conclusory fashion can alone justify a finding of waiver.[85]

In sum, I conclude Defendants waived their argument that Section 186 created a contractual forum selection clause in TAMA's Operating Agreement, and I do not consider it.

### 2. Section 59 Is Inapplicable To The Question Of Subject Matter Jurisdiction.

Defendants also invoke Section 59 of the NH Act in seeking dismissal of this action. Section 59 does no work for Defendants.

---

(Del. Ch. Sept. 19, 2022); Mohsen Manesh, *Creatures of Contract: A Half-Truth About LLCs*, 42 DEL. J. CORP. L. 391, 397, 407 (2018).

[83] D.I. 32 at 4–5.

[84] *Id.* at 5 ("Jung cites no authority for the proposition that a statute providing a default forum selection provision, but at the same time permitting contracting parties to opt out of the default, violates the constitution or any other law.").

[85] *See Voigt v. Metcalf*, 2020 WL 614999, at *8 n.3 (Del. Ch. Feb. 10, 2020).

26

Section 59 directs that disputes over who is a member of a New Hampshire LLC, among others, "shall be resolved in a proceeding in the superior court."[86] This plain text allocates jurisdiction among New Hampshire courts by clarifying that certain suits should be brought in the superior court, rather than the district court.[87] Nothing in the language of Section 59 mandates any actions be filed in New Hampshire.

This view is bolstered when Section 59 is read in view of Section 186.[88] First, many disputes covered by Section 59 would also be covered by Section 186—that is, Section 186 would already mandate that many such disputes be brought in New Hampshire, making any interstate jurisdictional function of Section 59 superfluous.[89] Second, the two sections use different language, with

---

[86] N.H. Rev. Stat. Ann. § 304-C:59.

[87] In New Hampshire, the district court and the superior court have concurrent jurisdiction over claims seeking damages between $1,500 and $25,000 and not concerning real estate. *See id.* § 502-A:14; *id.* § 491:22(II) (granting district courts concurrent jurisdiction with the superior court for claims arising under New Hampshire Revised Statutes Annotated § 502-A, but permitting defendants to remove cases to superior court "if the claim exceeds $1,500."). If the New Hampshire legislature sought to require certain claims, such as actions seeking a declaration that one is a member of an LLC, to be brought in the superior court, such statutory language would be necessary.

[88] *See New Hampshire v. Zubhuza*, 90 A.3d 614, 618 (N.H. 2014) ("Finally, we interpret a statute in the context of the overall statutory scheme and not in isolation." (internal quotation marks omitted) (quoting *State v. Burke*, 33 A.3d 1194, 1196 (N.H. 2011)).

[89] *See Petition of N.H.*, 986 A.2d 592, 594 (N.H. 2009) ("We must give effect to all words in a statute, and presume that the legislature did not enact superfluous or redundant words.").

Section 59 making no reference to bringing suit in New Hampshire and instead referring only to one of two courts within the state that could otherwise have jurisdiction.[90] The use of different language evinces an intent to give these provisions different meaning.[91]

Lastly, reading Section 59 as mandating certain claims be filed in New Hampshire would render the statute unconstitutional for the reasons I have explained. Avoiding that result favors construing the statute as allocating jurisdiction for suits filed in New Hampshire.[92] Thus, I read Section 59 to allocate jurisdiction among courts within New Hampshire, rather than mandating that

---

[90] *Compare* N.H. Rev. Stat. Ann. § 304-C:59 (providing claims "shall be resolved in a proceeding in the superior court"), *with id.* § 304-C:186 (providing claims "shall be resolved by litigation in the courts of the state of New Hampshire").

[91] *See New Hampshire v. Zhukovskyy*, 265 A.3d 27, 31 (N.H. 2021) ("Contrary to the defendant's contention, this language demonstrates that, when the legislature intends to grant a right to a hearing, it knows how to do so."); *New Hampshire v. Surrell*, 189 A.3d 883, 886 (N.H. 2018) ("Other provisions in RSA 651:20, I, demonstrate that the legislature knows how to impose limitations on the trial court when it chooses to do so."); *In re Baldoumas Enters., Inc.*, 829 A.2d 1056, 1058 (N.H. 2003) ("Moreover, to the extent that RSA 507–F:4 is relevant in determining the scope of RSA 179:5, I, it demonstrates that when the legislature intends to create liability for negligence instead of strict liability, it knows how to do so."); *Balke v. City of Manchester*, 834 A.2d 306, 309 (N.H. 2003) ("As the other statutes within the statutory scheme make clear, the legislature knows how to use the term 'public water system,' and we will not add words that the legislature has chosen not to include.").

[92] *See Polonsky*, 190 A.3d at 406.

28

certain suits be filed exclusively in New Hampshire.[93] It follows that Section 59 has no bearing on Delaware's jurisdiction over this case.

*  *  *  *  *

This Court may exercise subject matter jurisdiction over Jung's equitable claims asserting other members of TAMA breached fiduciary duties owed to Jung.[94] With all respect to New Hampshire's legislature and judiciary, the NH Act offers no valid impediment to this Court's constitutional role in applying New Hampshire's laws to transitory claims that are properly before this Court. Jung's equitable claims properly invoke this Court's subject matter jurisdiction, and the Court may exercise its cleanup jurisdiction over the remaining claims.[95]

### B.  The Court Has Personal Jurisdiction Over TAMA.

Defendants, presuming victory on their subject matter jurisdiction argument, next argue the Court lacks personal jurisdiction over only TAMA, and

---

[93] *See Kloiber*, 98 A.3d at 938–39 (interpreting statute providing that "[t]he Court of Chancery shall have exclusive jurisdiction over any action brought with respect to a qualified disposition" to mean that such actions should be brought in the Court of Chancery, rather than the Superior Court, and finding that the provision did not divest other states of jurisdiction).

[94] 10 *Del. C.* § 341 ("The Court of Chancery shall have jurisdiction to hear and determine all matters and causes in equity."); *see, e.g.*, *Delawareans for Educ. Opportunity*, 2018 WL 4849935, at *5 ("[J]urisdiction exist if a plaintiff states an equitable claim.").

[95] *Getty Ref. & Mktg. Co. v. Park Oil, Inc.*, 385 A.2d 147, 149 (Del. Ch. 1978).

only as to the breach of contract claim.[96]  "When a defendant moves to dismiss a complaint pursuant to Court of Chancery Rule 12(b)(2), the plaintiff bears the burden of showing a basis for the court's exercise of jurisdiction over the defendant."[97]

TAMA's personal jurisdictional argument is limited to the breach of contract claim, and gains little traction because TAMA has not disputed personal jurisdiction for any of the other substantially related claims against it.  A plaintiff faced with a Rule 12(b)(2) challenge is tasked only with responding to those arguments raised by the moving defendants.[98]  Any arguments not made or not

---

[96] D.I. 24 at 7 ("To the extent that any claims remain, the Court also lacks subject matter and personal jurisdiction over those claims . . . ."); *id.* at 14 ("[The breach of contract] count seeks $6,596 in damages arising from a contract with no relation to Delaware, it is against a New Hampshire entity and the count fails to explain how the long-arm statute might provide personal jurisdiction over Tama with respect to that claim, and Jung has an adequate remedy at law: the $6,596 owed under an employment contract."); *id.* at 17 ("But because Tama is a New Hampshire entity, and because the breach of contract has no apparent connection to Delaware, the Court lacks personal jurisdiction over Tama."). Defendants clarified they were making this argument in this limited context in their reply brief and stated they intended to "limit[] their personal jurisdiction arguments to Jung's discrete breach of contract claim," but did not contest personal jurisdiction as to the conspiracy claim.  D.I. 32 at 1.

Tijerina, Edgar, and ETI have not argued this Court lacks personal jurisdiction over them.

[97] *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007).

[98] *See Mack*, 2020 WL 7774604, at *16 ("The defendant then bears the burden of asserting all grounds supporting the defense in his opening brief, filed either contemporaneously with or shortly after the motion.  At that point, substantive arguments not briefed are deemed waived.").

30

sufficiently developed are deemed waived.[99]  Further, "[t]he court may exercise

its discretion to litigate a claim for which personal jurisdiction would not

otherwise exist where the claim is brought along with other claims for which

jurisdiction does exist that are sufficiently related to that claim to warrant

prosecution before a single tribunal."[100]  Where a defendant has not contested the

court's jurisdiction over some claims, "it is not necessary to engage in a

comprehensive personal jurisdiction review 'from scratch.'"[101]  Rather, the Court

should consider "whether the defendants would be substantively or unfairly

prejudiced by this Court's exercise of jurisdiction," i.e. whether that exercise

would comport with due process.[102]  If due process is not offended, the Court

should consider "whether judicial economy warrants such an exercise."[103]  That

inquiry asks whether the additional claim is "sufficiently related," by considering

whether it presents a significant number of unrelated facts, seeks similar or

---

[99] *Voigt*, 2020 WL 614999, at *8 n.3 (reasoning the defendants "invested so little in those arguments that they can be regarded as waived."); *see also Voss v. Voss*, 2022 WL 3371608, at *7 (E.D. Mich. Aug. 16, 2022) ("Therefore, the claim for lack of personal jurisdiction is waived because Defendant did not develop an argument for it.").

[100] *Cap. Grp. Cos. Inc. v. Armour*, 2004 WL 2521295, at *4 (Del. Ch. Oct. 29, 2004).

[101] *Cap. Grp.*, 2004 WL 2521295, at *4 (quoting *Fitzgerald v. Chandler*, 1999 WL 1022065, at *4 (Del. Ch. Oct. 14, 1999)).

[102] *Fitzgerald*, 1999 WL 1022065, at *4; *Pacira BioSciences v. Fortis Advisors LLC*, 2021 WL 4949179, at *22 (Del. Ch. Oct. 25, 2021).

[103] *Fitzgerald*, 1999 WL 1022065, at *4.

different relief, and is governed by Delaware law.[104] The Court also considers whether Delaware has a strong interest in adjudicating the claim, and whether exercising jurisdiction would offend notions of comity.[105]

Here, TAMA has not asserted any prejudice or offense to due process from this Court hearing the breach of contract claim alongside the rest of the claims, and I see none. Trying the claims together supports judicial economy. The breach of contract claim is sufficiently related to the declaratory judgment, breach of fiduciary duty, and conspiracy claims against TAMA. Jung's membership in TAMA, which anchors the rest of her claims against TAMA, resulted from the Services Agreement. Defendants rely on the existence of a settlement agreement as a defense to all four claims, claiming that agreement caused Jung to relinquish her interest in TAMA. Defendants have sought enforcement of that settlement agreement, which will have to be adjudicated regardless of whether the Court exercises jurisdiction over the breach of contract claim. The adjudication of the breach of contract claim therefore involves litigating the same elements and facts as the other claims against TAMA.[106] Finally, it appears New York law may

---

[104] *Ruggiero v. FuturaGene*, 948 A.2d 1124, 1139 (Del. Ch. 2008); *Pacira BioSciences,* 2021 WL 4949179, at *23.

[105] *Ruggiero*, 948 A.2d at 1139; *Pacira BioSciences, Inc.*, 2021 WL 4949179, at *22–23; *Cap. Grp.,* 2004 WL 2521295, at *5.

[106] *See Cap. Grp.,* 2004 WL 2521295, at *4 (exercising pendent personal jurisdiction where the claims involved the same facts and sought the same relief); *Fitzgerald*, 1999 WL 1022065, at *4–5 (exercising pendent personal jurisdiction where two claims

govern the breach of contract claim, as explained below, such that the interest of comity does not compel any particular restraint in favor of TAMA's home state of New Hampshire.

Defendants' motion to dismiss the breach of contract claim against TAMA for lack of personal jurisdiction is denied.

### C. Defendants' Motion To Dismiss Under Rule 12(b)(6)

I now turn to Defendants' motion to dismiss under 12(b)(6). The standard governing a motion to dismiss under Court of Chancery Rule 12(b)(6) for failure to state a claim for relief is well settled:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iii) dismissal is inappropriate unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[107]

---

involved the same acts); *Technicorp Int'l II, Inc. v. Johnston*, 1997 WL 538671, at *20 (Del. Ch. Aug. 25, 1997) (exercising pendent personal jurisdiction where one claim was "subsumed" within the other, as they required proof of the same elements).

[107] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (footnotes omitted).

The touchstone "to survive a motion to dismiss is reasonable 'conceivability.'"[108] This standard is "minimal"[109] and plaintiff-friendly.[110] "Indeed, it may, as a factual matter, ultimately prove impossible for the plaintiff to prove [its] claims at a later stage of a proceeding, but that is not the test to survive a motion to dismiss."[111] Despite this forgiving standard, the Court need not accept conclusory allegations unsupported by specific facts or draw unreasonable inferences in favor of the nonmoving party.[112] "Moreover, the court 'is not required to accept every strained interpretation of the allegations proposed by the plaintiff.'"[113] In determining whether to grant a motion to dismiss, the Court may consider any documents incorporated into the complaint by reference.[114] Defendants have moved to dismiss Counts I, II, III, and VI. I will consider each in turn.

---

[108] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 536–37 (Del. 2011).

[109] *Id.* at 536.

[110] *E.g.*, *Clouser v. Doherty*, 175 A.3d 86, 2017 WL 3947404, at *9 (Del. 2017) (TABLE); *In re USG Corp. S'holder Litig.*, 2021 WL 930620, at *3–4 (Del. Ch. Mar. 11, 2021); *In re Trados Inc. S'holder Litig.*, 2009 WL 2225958, at *8 (Del. Ch. July 24, 2009).

[111] *Cent. Mortg. Co.*, 27 A.3d at 536.

[112] *E.g.*, *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009).

[113] *In re Trados Inc.*, 2009 WL 2225958, at *4 (quoting *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006)).

[114] *See Wal-Mart Stores*, 860 A.2d at 320. Specifically, in addition to the documents attached to the Complaint, I will consider the Operating Agreement.

**1. Jung Stated A Claim For A Declaratory Judgment That She Owns An Interest In TAMA Or Is Entitled To Compensation For The Wrongful Dispossession Of Her Interest.**

Count I seeks a declaratory judgment that Jung is the rightful owner of a 2.08% interest in TAMA or that she is entitled to compensation for the wrongful dispossession of her TAMA interest. Defendants argue this claim should be dismissed because "according to the complaint, Jung *was* the rightful owner of membership interests, and the complaint recognizes that Tama treated her as the owner of those interests," and "[t]he complaint instead attempts to state a claim that defendants wrongfully deprived her of those interests without paying her the claimed value, $140,400, but not that she never owned those membership interests in the first place."[115]

I do not read Count I as seeking merely a declaration that Jung was formerly a TAMA member. The Complaint pleads facts consistent with Jung still holding a 2.08% interest in TAMA because she never relinquished that interest. Alternatively, the pled facts show it is reasonably conceivable that Defendants wrongfully appropriated her interest in TAMA, in which case she may be entitled

---

[115] D.I. 24 at 15–16 (emphasis in original).

to fair compensation.[116]  Either case states a claim upon which relief could conceivably be granted.  Defendants' Motion as to Count I is denied.

### 2. The Complaint States A Claim For Breach Of Fiduciary Duty As To Tijerina and Edgar But Not As To TAMA.

Count II alleges that Tijerina, Edgar, and TAMA breached their fiduciary duties of care and loyalty to Jung.  Jung alleges Tijerina and Edgar engaged in self-dealing at Jung's expense "[b]y selling TAMA to ETI (and causing TAMA to be party to the transaction without including [Jung] and appropriating her rightful share of the proceeds."[117]  Jung alleges TAMA breached its fiduciary duties "[b]y allowing the transaction to occur without including [Jung], who was a member in it."[118]  Defendants do not dispute that the Complaint states a claim that Edgar breached his fiduciary duties.  Over Defendants' Motion, I conclude the Complaint adequately pleads a claim for breach of fiduciary duty against Tijerina.  Jung abandoned her claim that TAMA breached its fiduciary duties.

---

[116] Compl. ¶¶ 11, 14, 25, 26, 28.

[117] *Id.* ¶ 31.

[118] *Id.* ¶ 32.

### a. Because TAMA Is A Member-Managed LLC, The Complaint Adequately Pleads Tijerina Owed Fiduciary Duties To Jung.

Jung alleges that Tijerina owed duties of care and loyalty to Jung as a "co-member[] in TAMA."[119] Defendants argue Jung failed to state a claim as to Tijerina because TAMA is a manager-managed LLC, and Tijerina was not a manager and so did not owe fiduciary duties under New Hampshire law. In opposition, Jung points out she could not meaningfully respond as to Tijerina's role within TAMA because she did not have a copy of the Operating Agreement. Defendants provided the Operating Agreement to Jung and the Court in advance of supplemental briefing.

Whether Tijerina owes fiduciary duties is a question of New Hampshire law.[120] Under the NH Act, whether a member of an LLC owes fiduciary duties to the other members depends on whether the LLC is manager-managed LLC or member-managed.[121] If the LLC is member-managed, then all members owe fiduciary duties to both the LLC and the other members.[122] If the LLC is manager-managed, then the other members owe fiduciary duties only "to the extent that

---

[119] *Id.* ¶¶ 30–32.

[120] All parties agree New Hampshire law governs this claim.

[121] *See* NH. Rev. Stat. § 304-C:106.

[122] *Id.* § 304-C:106(I).

37

these non-manager members exercise management functions for these limited liability companies."[123]

My first task is to interpret TAMA's Operating Agreement to determine whether TAMA is a member-managed or a manager-managed LLC. Operating agreements are contracts, and must be interpreted according to the same principles.[124] The Court's goal in interpreting a contract is to give the "agreement the meaning intended by the parties when they wrote it."[125] Where the agreement is unambiguous, the Court will ascertain the parties' intent "from the plain meaning of the language used in the contract."[126] Under New Hampshire law, "[t]he language of a contract is ambiguous if the parties to the contract could reasonably disagree as to the meaning of that language."[127] "If the agreement's language is ambiguous, it must be determined, under an objective standard, what

[123] *Id.* § 304-C:106(II).

[124] *See Lakes Region Gaming v. Miller*, 62 A.3d 838, 842 (N.H. 2013) ("Because the operating agreement is a form of contract, we will apply the general rules of contract interpretation.").

[125] *Birch Broad., Inc. v. Cap. Broad. Corp.*, 13 A.3d 224, 228 (N.H. 2010).

[126] *Id.* (quoting *Ryan James Realty v. Villages at Chester Condo. Assoc.*, 893 A.2d 661 (N.H. 2006)).

[127] *Id.* (quoting *In the Matter of Taber–McCarthy & McCarthy*, 993 A.2d 240, 244 (N.H. 2010)).

the parties, as reasonable people, mutually understood the ambiguous language to mean."[128]

TAMA is a member-managed LLC. Article V of the Operating Agreement, titled "Management," provides: "**General Powers.** The business, properties and affairs of the Company shall be administered by or under the direction of the Members."[129] The Operating Agreement appoints Edgar as the "Managing Member,"[130] but the only authority given to him in this role is to sign checks.[131] TAMA's Operating Agreement places management powers in the hands of its members. And so, under New Hampshire law, TAMA's members owe each other fiduciary duties.[132]

Tijerina owed fiduciary duties as a TAMA member. The fact that he is not a manager is irrelevant to whether he owes fiduciary duties. Defendants' Motion is denied as to Tijerina.

---

[128] *Id.*

[129] TAMA Operating Agreement art. V, § 1.

[130] *Id.* art. XI.

[131] *Id.* art. VI, § 3.

[132] *See* N.H. Rev. Stat. Ann. §§ 304-C:106, 110.

### b. The Complaint Does Not State A Claim That TAMA Breached Its Fiduciary Duties, Because TAMA Did Not Owe Fiduciary Duties.

Defendants seek dismissal of Jung's breach of fiduciary duty claim against TAMA because the NH Act imposes no such duties on TAMA. As best I can tell, Defendants are correct: the NH Act imposes fiduciary duties on an LLC's fiduciaries, but not the LLC itself.[133] Jung did not respond to Defendants' argument in any meaningful way, and has abandoned this claim.[134] The Motion is granted as to Count II against TAMA.

### 3. Jung Pled ETI Aided And Abetted Tijerina's And Edgar's Breaches Of Fiduciary Duties.

Count III alleges that ETI aided and abetted Edgar's and Tijerina's breaches of fiduciary duty. Defendants argue that under New Hampshire law, an entity cannot aid and abet its fiduciary's wrongdoing. The parties sparred over whether this proposition is limited to situations in which the fiduciary was acting in the scope of her employment.

The parties miss the point. Jung alleges ETI aided and abetted breaches of fiduciary duty Tijerina and Edgar committed in their roles as TAMA fiduciaries.

---

[133] *See id.* §§ 304-C:106, 108, 110.

[134] *In re Dow Chem. Co. Deriv. Litig.*, 2010 WL 66769, at *14 (Del. Ch. Jan. 11, 2010) ("Plaintiffs quietly abandoned these arguments when they failed to respond to defendants' arguments regarding the *Caremark*[] claims beyond mere reassertions of broad allegations.").

She does not allege ETI aided and abetted breaches in their roles as ETI fiduciaries. Tijerina and Edgar are both affiliates of ETI, and they very well may owe fiduciary duties to ETI. But the claim asserts ETI aided and abetted breaches of fiduciary duty owed to TAMA.[135] The Motion is denied as to Count III.

### 4. New Hampshire's Statute Of Limitations Does Not Mandate Dismissal Of Jung's Breach of Contract Claim.

Count VI asserts a claim against TAMA for breach of contract, seeking to recover certain amounts allegedly owed to Jung under the Services Agreement. Defendants have moved to dismiss under Rule 12(b)(6), arguing Jung's claim is barred by New Hampshire's three-year statute of limitations. Jung argues that New York law governs her claim, which provides for a six-year statute of limitations.

The Services Agreement does not contain a choice of law provision. In that circumstance, Delaware follows Section 188 of the Restatement (Second) of Conflicts of Law.[136] Section 188 sets forth five factors to consider: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of

---

[135] Defendants' only remaining argument is that ETI cannot be liable for aiding and abetting because there is no predicate breach of fiduciary duty, but, as explained above, Defendants' motion is denied as to Tijerina's and Edgar's breaches of fiduciary duty.

[136] *See SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 342 (Del. 2013); *Certain Underwriters at Lloyd's, London v. Burlington N. R. Co.*, 653 A.2d 304, 1994 WL 658483, a *2 (Del. 1994) (TABLE) (citing *Oliver B. Cannon & Son, v. Dorr-Oliver, Inc.*, 394 A.2d 1160, 1166 (Del. 1978)).

performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties."[137] The Complaint alleges the Services Agreement was executed in New York,[138] Jung is a Canadian resident,[139] and TAMA is a New Hampshire LLC.[140] In briefing, Jung asserted that at least some of her duties under the Services Agreement were performed in New York.[141] Defendants were silent on reply.

With this limited information, Defendants' lack of response, and my obligation to make all inferences in Jung's favor, I conclude there is not presently an adequate basis to apply New Hampshire's statute of limitations to an alleged breach of the Services Agreement. Defendants' Motion is denied as to Count VI.

III. CONCLUSION

For the forgoing reasons, the Motion is **GRANTED IN PART AND DENIED IN PART**. The Motion is denied as to Counts I, III, IV, V, and VI. Regarding Count II, the Motion is granted as to TAMA but denied as to Tijerina.

---

[137] Restatement (Second) of Conflict of Laws § 188(2) (1971).

[138] Compl. ¶ 9.

[139] *Id.* ¶ 1.

[140] *Id.* ¶ 3.

[141] The only record support for this contention appears in a document attached to an affidavit attached to Plaintiff's answering brief. D.I. 29 at Ex. 1. This affidavit was submitted solely for purposes of opposing Defendants' Motion to Enforce the Settlement Agreement, and is not properly considered for purposes of the motion to dismiss.

The parties shall supply a stipulated implementing order within twenty days, and confer on a scheduling order.